BREWER, Appellant,

v.

CLEVELAND CITY SCHOOLS BOARD OF EDUCATION.

[Cite as *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71283.

Decided Aug. 4, 1997.

*Michael B. Pasternak,* for appellant.

*Juanita Bryant; Duvin, Cahn & Hutton, Janette M. Louard and Robert M. Wolff,* for appellee.

---

PATRICIA ANN BLACKMON, Judge.

Vera Brewer, plaintiff-appellant, appeals the trial court's granting of summary judgment in favor of the Cleveland Board of Education ("Cleveland Board"), defendant-appellee, on her complaint for sexual harassment, racial discrimination, and sexual discrimination allegedly committed by her supervisors—Carl Lucido and Donald Wilson. Brewer, an African–American female employed as an assistant custodian by the Cleveland Board, claimed that (1) a co-worker made racist remarks about "Black people on welfare" and called her "Aunt Jemima," (2) she was asked to "use her feminine ways" to procure custodial supplies, and (3) she was given poor work evaluations and increased work that was not given to male employees, assigned dangerous chores, and denied promotions to higher paying positions. Brewer assigns the following error for our review:

"The trial court erred in granting defendant-appellee's motion for summary judgment when plaintiff-appellant provided appropriate evidence to demonstrate that genuine issues of material fact were in dispute as to whether defendant-appellee board of education subjected plaintiff-appellant to sexual and racial discrimination and harassment, and inflicted severe emotional distress."

After reviewing the record and arguments of the parties, we affirm the trial court's decision. The apposite facts follow.

On August 17, 1992, Cleveland Board hired Brewer as an assistant custodian. Of two hundred fifteen assistant custodians, only eight were female. In 1993, the

Cleveland Board assigned Brewer to Euclid Park Elementary School ("Euclid"), where Carl Lucido, a white male, was her supervisor.

Brewer claimed that Lucido referred to her and an African–American female assistant cook as "Aunt Jemima." On one occasion, he made disparaging remarks about African–Americans on welfare and commented about Brewer once being on welfare. Lucido sometimes assigned Brewer to hazardous jobs, such as cleaning the boiler room and jobs requiring heavy lifting.

Brewer claimed that she was sexually harassed, threatened, and intimidated by a male salesman. She reported the incident to Lucido and the Cleveland Board, but to no avail.

At her request, Brewer was transferred to Bolton Elementary School ("Bolton") then to Iowa Maple Elementary School ("Iowa"). While at Iowa, she was told by her supervisor, Donald Wilson, to "use her feminine ways" to get custodial supplies. Wilson also required her to perform work not required of her male colleagues. She reported Wilson to her union and to the Cleveland Board. Thereafter, Wilson placed poor work evaluations in her employment file.

Brewer asked for a promotion from Iowa to another school. After initially denying her request, the Cleveland Board transferred Brewer to East Technical High School.

Brewer filed a complaint against the Cleveland Board, alleging that the Cleveland Board, by its agents Lucido and Wilson, sexually and racially discriminated against her, denied her promotions and "preferential" transfers, and intentionally inflicted emotional distress upon her. She also claimed Wilson sexually harassed her.

The Cleveland Board filed summary judgment claiming, as a political subdivision, that it was immune from Brewer's suit under R .C. Chapter 2744 and that Brewer failed to produce evidence of race and sex discrimination, sexual harassment, and intentional infliction of emotional distress. Brewer countered with her affidavit and deposition, including excerpts from the depositions of Richard Mosley (Manager of Building Operations for the Cleveland Board), Margaret Bowers–Moseley (Principal at Iowa Maple Elementary School), and Loretta Smith (custodial employee for Cleveland Board).

Richard Mosley stated that the remarks, if made, were inappropriate and explained that it was not the Cleveland Board's policy to tolerate them. Loretta Smith stated that she, too, had been sexually harassed by a black male supervisor. She viewed her situation as isolated and did not know of one other incident until she learned of Brewer's. She also admitted that she was not a witness to any of Brewer's allegations. Margaret Bowers–Moseley stated that Lucido's remarks were inappropriate.

Brewer also used statistical data in an effort to show an inference of discrimination against female custodians. She argued that hiring only eight females of two hundred fifty-five custodians indicated that the Cleveland Board impermissibly considered sex as a factor in its hiring decisions. Citing *United States Postal Serv. Bd. of Governors v. Aikens* (1983), 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403, she argued that a plaintiff may use such statistical evidence to prove discriminatory animus.

The trial court granted the Cleveland Board's motion for summary judgment without opinion. Brewer appeals and argues that the Cleveland Board has not sustained its burden of looking to the record and showing where Brewer's evidence does not present a genuine issue for trial. The Cleveland Board argues that even if Brewer's allegations are true, they do not present a genuine issue for trial. The Cleveland Board specifically refers to the remarks by Lucido and Wilson as isolated, stray remarks not having any disparate impact on Brewer's job. Also, Brewer's evidence does not show that she was treated differently in her job than were other employees. The Cleveland Board argues that Brewer's use of statistical data to show discrimination lacks the necessary probative value to require a trial on the issues of race and sex discrimination. Furthermore, the Cleveland Board argues that when Brewer requested a transfer, it was granted. Moreover, it argues that all promotions are based on seniority. Consequently, it argues that no genuine issue exists as a matter of law for trial.

Before we proceed with our discussion, we note that, during oral argument, the Cleveland Board withdrew its position that Brewer could not sue it under R.C. Chapter 2744. The Cleveland Board acknowledges that R.C. 2744.09 denies it immunity when federal and state civil rights claims are made. *Wohl v. Cleveland Bd. of Edn.* (N.D.Ohio 1990), 741 F.Supp. 688.

 The standard of review in a summary judgment appeal is *de novo*. *De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial. *Dupler v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116, 18 O.O.3d 354, 413 N.E.2d 1187. *De novo* review requires that we review the trial court's decision independently and without deference to it. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153.

 Consequently, the movant must inform the trial court of the basis for its motion by identifying those portions of the record that demonstrate an absence of a genuine issue for trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. A genuine issue exists when the evidence is such that a reasonable jury

could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

Summary judgment will be affirmed when the plaintiff bases her claim of discrimination on one isolated comment by her employer and nothing more. *Gagne v. Northwestern Natl. Ins. Co.* (C.A.6, 1989), 881 F.2d 309. Here Brewer based her claim of race discrimination on Lucido's comments regarding blacks on welfare and referring to Brewer and another woman as "Aunt Jemina." Cleveland Board argues that these remarks are isolated and stray, and Brewer has not produced evidence to show otherwise.

The Cleveland Board argues that the remarks made by Lucido and Wilson were isolated, stray remarks that did not affect Brewer's job. "Stray remarks in the workplace when unrelated to the decision-making process, are insufficient to establish a prima facie case of discrimination, even when the statements are made by the decision-maker at issue." *Smith v. Firestone Tire & Rubber Co.* (C.A.7, 1989), 875 F.2d 1325, 1330.

*Smith v. Firestone* makes it clear that it is irrelevant whether the decision-maker is the one making the comment. The issue before the court is whether the comment is related to a decision regarding the plaintiff's employment. Here Brewer has not shown this nexus.

Whether a stray remark is actionable race or sex discrimination depends on the following factors: (1) was the comment made by a decision-maker or an agent in the scope of employment; (2) was the comment related to the decision-making process; (3) was the comment an isolated remark; and (4) was the comment in proximity to the alleged discriminatory act? *Cooley v. Carmike Cinemas, Inc.* (C.A.6, 1994), 25 F.3d 1325. Brewer has the initial burden of producing some evidence on each of the four factors.

After reviewing the record, it is clear to this court that Brewer has failed to show that the comments were more than isolated remarks. Also, Brewer has failed to present evidence of a discriminatory act. She vaguely refers to unequal work assignments and failed promotions. However, the evidence shows that her job assignments were the duties of an assistant custodian and that promotions were based on seniority, not on race or sex.

Moreover, she has not shown any connection between these remarks and any adverse employment decision. Presumably, after the remarks were made by Lucido, she requested a transfer, which was granted. Although this court abhors the challenged remarks and believes them demeaning to African–Americans, they appeared to be isolated and to have had no impact on Brewer's job.

385

 Assuming that Brewer had survived the *Cooley* test, she still would have to produce some evidence showing race and sex discrimination under the following elements: (1) she is a racial minority, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) a comparable, non-protected person was treated more favorably. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

 Although Brewer has shown the first and third prongs of *McDonnell Douglas*, she has failed on the remaining prongs. Brewer has not demonstrated in the record that she suffered an adverse employment action. She argues that she was given uneven work assignments and not given promotions. However, the record shows that the promotions were given based on seniority, and the work assignments appeared to be a part of her job duties. She has not pointed to one incident or identified one person who received a promotion that she applied for or who received work assignments different from the work assigned to her.

 Brewer argues that the fact that only eight out of two hundred fifty-five assistant custodians are females raises an inference of discrimination. The statistical evidence must prove disparate treatment as it relates to employment action. This Brewer has not done.

As for Brewer's sexual harassment claim, she sets forth the following incidents: While at Euclid, a salesman accosted her twice and would call her on the job. While at Iowa, she was told to "use her feminine ways" to get supplies from the distribution center from a male employee identified as "Big John." When she complained about the Iowa incident, the offending supervisor gave her poor evaluations.

 The United States Supreme Court has recognized two forms of sexual harassment: hostile environment and the *"quid pro quo."* Hostile environment exists when the employee is subjected to an offensive or abusive environment. Quid pro quo exists when the employer conditions the employment benefit upon sexual favors. *Harris v. Forklift Sys., Inc.* (1993), 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295; *Meritor Sav. Bank v. Vinson* (1986), 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49; *Trotta v. Mobil Oil Corp.* (S.D.N.Y.1992), 788 F.Supp. 1336; *Miller v. Bank of Am.* (C.A.9, 1979), 600 F.2d 211.

 To establish hostile work environment, Brewer had to produce some evidence on the following elements: (1) that she belongs to a protected group, (2) that she was subjected to unwelcome sexual harassment, (3) that the harassment complained of was based on sex, (4) that the harassment complained of affected a term, condition, or privilege of employment, and (5) that the employer knew or should have known of the harassment and failed to take remedial action. *Henson v. Dundee* (C.A.11, 1982), 682 F.2d 897.

 Under prong 5 of this standard, Brewer had to show *respondeat superior*. Thus, Brewer has to show by some evidence that the Cleveland Board should have known about the offensive remarks. To establish that it should have known, she has to show that the act was so pervasive that it raised an inference of constructive knowledge. Brewer claimed that Wilson told her to "use her feminine ways" to get supplies. Although this is offensive in any context, it was one isolated remark. The Cleveland Board argues that the comment was not sufficiently severe to show sexual harassment. We agree with the Cleveland Board.

Moreover, Brewer has not shown that the Cleveland Board failed to respond to Wilson's harassment. There is no evidence in the record to establish this element. Brewer did not show in her deposition that she told the Cleveland Board of the incident. In a summary judgment context, Brewer has to produce some evidence to survive summary judgment. She need not prove each element but merely produce some facts that suggest that a factfinder could rule in her favor. This she has not done.

 Finally, Brewer alleges intentional infliction of emotional distress by the Cleveland Board. To establish this claim, Brewer had to produce some evidence of the following:

"(1) that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff;

"(2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community';

"(3) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'" *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 11 OBR 63, 463 N.E.2d 98.

This she has not done. Summary judgment was proper as to each count of Brewer's complaint.

*Judgment affirmed.*

JAMES D. SWEENEY, C.J., and PATTON, J., concur.