JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant Vincent J. Conforte ("Conforte") appeals from the decision of the Common Pleas Court that granted defendants-appellees Cavitch, Familo, Durkin and Frutkin Co., L.P.A. ("Cavitch"), Douglas A. Dipalma, Esq. ("Dipalma") and Mark A. Trubiano, Esq.'s ("Trubiano") (collectively "Cavitch" or "Defendants") motion for summary judgment. Upon review, we conclude that there are no genuine issues of material fact and that defendants are entitled to judgment as a matter of law on Conforte's claims. Accordingly, we affirm the trial court's decision.
 {¶ 2} A review of the record reveals the following facts: Diamond Financial Group, Inc. ("Diamond Financial") was a mortgage brokerage business incorporated in 1995. Conforte and David LaSalla ("LaSalla") were equal partners in Diamond Financial. Cavitch served as Diamond Financial's corporate counsel. DiPalma and Trubiano were members of the Cavitch firm.
 {¶ 3} In 1998, Conforte and LaSalla entered into negotiations for LaSalla to buy out Conforte's interest in Diamond Financial. During the negotiations, Conforte was represented by McCarthy, Lebit, Crytal 
Haiman Co., L.P.A. and LaSalla was represented by Cavitch. Conforte signed a waiver of conflict allowing Cavitch to represent LaSalla personally in these negotiations; however, the negotiations ended without a sale.
 {¶ 4} On August 26, 1999, Conforte filed a complaint against LaSalla and other individuals and corporations alleging, among other things, conversion and breach of fiduciary duty.
 {¶ 5} On September 17, 1999, the parties entered into a Settlement Agreement. Under the terms of the settlement, LaSalla agreed to pay Conforte $90,000 pursuant to a promissory note in payments of $5,000 per month starting on October 15, 1999. LaSalla and Conforte also entered into an extensive Close Corporation Agreement setting forth their respective duties and obligations relating to Diamond. In addition, the Settlement Agreement contained a Mutual Release which provided the following:
 {¶ 6} "Conforte, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby and by these presents for himself and his heirs, executors, personal representatives, and assigns fully remise, release, acquit and forever discharge LaSalla, his agents, servants, employees, heirs, executors, personal representatives, and assigns, jointly and severally, of and from any and all rights, claims, demands, damages, actions and causes of actions of any nature whatsoever, whether arising at law or in equity, and whatsoever jurisdiction whether in the United States or other countries, which Conforte and anyone claiming by or through him may have had, may now have, or may hereafter have against LaSalla by reason of any matter, cause, happening or thing from the beginning of time, known or unknown, direct or indirect, occurring prior to and including the date of this mutual release."
 {¶ 7} On December 16, 1999, Conforte filed a complaint against LaSalla alleging breach of the Close Corporation Agreement and fiduciary duty and requesting an accounting and appointment of receiver. On January 25, 2000, LaSalla filed a motion for summary judgment claiming that Conforte's complaint was barred pursuant to the September 17, 1999 Settlement Agreement.
 {¶ 8} On July 11, 2000, Conforte amended his complaint to assert claims against Cavitch, DiPalma and Trubiano for legal malpractice and fraud relating to Diamond Financial. On November 1, 2000, Cavitch filed a motion for summary judgment claiming that Conforte's complaint was barred pursuant to the September 17, 1999 Settlement Agreement. On January 17, 2001, the trial court granted defendants' motion for summary judgment. It is from this decision that Conforte now appeals and raises two assignments of error for our review. We will address Conforte's assignments of error together as they both address the trial court's grant of summary judgment.
 {¶ 9} "I. The trial court erred by allowing a purported release to take effect when the purported release was subject to a condition precedent, which was never met.
 {¶ 10} "II. The trial court erred in allowing attorneys with conflicting interests to benefit from a purported settlement when there is not [sic] proof in the record that all of the parties were advised of the existence and nature of all claims involved in the settlement including the fact that the attorneys with the conflicting interests would be excused from a malpractice case that one of the releasing parties had against them."
 {¶ 11} In these assignments of error, Conforte claims that the trial court erred in granting summary judgment in favor of defendants because genuine issues of material fact existed concerning his claims against Cavitch, DePalmi and Trubiano.
 {¶ 12} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial."Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378, citingDupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120.
 {¶ 13} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. WillisDay Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 14} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 15} With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in defendants' favor was appropriate.
A. Effect of the Settlement Agreement
 {¶ 16} Here, Conforte and LaSalla entered into a Settlement Agreement. The Settlement Agreement contained a Mutual Release. This release provided in pertinent part that Conforte released "LaSalla, his agents, servants, employees, heirs, executors, personal representatives, and assigns, jointly and severally, of and from any and all rights, claims, demands, damages, actions and causes of actions of any nature whatsoever * * *."
 {¶ 17} The purpose of this release was to settle all legal claims which existed between the parties with respect to Conforte's interest in Diamond Financial. Pursuant to this release, Conforte agreed to surrender any claims he had against LaSalla arising from Conforte's involvement, ownership and disposition of Diamond Financial. The release also discharged any liability for LaSalla's servants, assigns, employees, executors, agents, and personal representatives.
 {¶ 18} The Ohio Supreme Court has found that releases containing language such as this are valid and preclude claims against not only the original defendant, but also those claims asserted against their legal counsel. See Pakulski v. Garber (1983), 6 Ohio St.3d 252.
 {¶ 19} Here, Conforte claims that Cavitch, DePalmi and Trubiano conspired with LaSalla to defraud him and damage his interest in Diamond Financial. He claims that LaSalla forged his name on documents relating to Diamond Financial and that Cavitch, DePalmi and Trubiano had actual or constructive knowledge of these forgeries. These actions, even if true, all relate to activities by Cavitch in their capacity as legal counsel for Diamond Financial and were resolved by the Settlement Agreement entered into by Conforte and LaSalla. Accordingly, the trial court did not err in granting defendants' motion for summary judgment and finding that Conforte's claims were barred based upon the terms of the Settlement Agreement.
B. Condition Precedent
 {¶ 20} Conforte argues that its duty to release all claims against Cavitch, DePalmi and Trubiano was excused as a result of LaSalla's failure to fulfill its duty under the Settlement Agreement to pay $90,000 to Conforte by November 1, 1999. We disagree.
 {¶ 21} The plain language of the Settlement Agreement does not support Conforte's argument that payment in full by November 1, 1999 was a condition precedent to its obligation to release all claims. Rather, the Promissory Note at issue clearly states that LaSalla promised to pay the sum of $90,000 in 18 monthly installments of $5,000 beginning on October 15, 1999. Thus, LaSalla had until March 15, 2001 to pay the Promissory Note in full. The only condition which the Settlement Agreement places upon LaSalla is that: (1) the promissory note gets paid in full and (2) the "Rockside office has been made available to Conforte no later than November 1, 1999." Contrary to Conforte's assertions, the November 1, 1999 date does not apply to the payment of the $90,000. The payment of that money is governed by the terms of the Promissory Note. Since Conforte has not alleged that the Rockside office was not made available to him by November 1, 1999, Conforte cannot show that a condition precedent has not been met.
C. Conflict of Interest
 {¶ 22} Conforte argues that Cavitch, DePalmi and Trubiano should not be able to rely upon the release language in the Settlement Agreement because of a conflict of interest. We disagree.
 {¶ 23} In 1998, Conforte and LaSalla entered into negotiations for LaSalla to buy out Conforte's interest in Diamond Financial. Conforte was represented by McCarthy, Lebit, Crytal Haiman Co., L.P.A. during these negotiations. LaSalla, in his personal capacity, was represented by Cavitch. Since Cavitch also served as Diamond Financial's corporate counsel, Conforte signed a written waiver of conflict allowing Cavitch to represent LaSalla personally in the negotiations. When the resolution of the dispute between Conforte and LaSalle was reached in September 1999, one of the documents executed by the parties was the Settlement Agreement which barred Conforte from pursuing any claims against Cavitch in connection with Diamond Financial.
 {¶ 24} Here, there is no dispute that Conforte was informed about any possible conflict, that Conforte was represented by legal counsel of his own choice, that Conforte understood the terms of the waiver, and that Conforte signed the written waiver of conflict. Thus, the trial court did not err in granting summary judgment in favor of defendants.
 {¶ 25} D. Sole Remedy
 {¶ 26} The Settlement Agreement entered into by LaSalla and Conforte is binding. Accordingly, if LaSalla has defaulted on the terms of the Promissory Note, as alleged by Conforte, then Conforte's sole remedy would be for breach of contract against LaSalla. See Kokkonen v.Guardian Life Insurance Co. (1994), 511 U.S. 375, 381-82. Indeed, Conforte has filed such suit and it is currently pending as Case No. 404469 in the Cuyahoga Court of Common Pleas.
 {¶ 27} Conforte's first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and PATRICIA A. BLACKMON, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. 112, Section 2(A)(1).