JOURNAL ENTRY AND OPINION
{¶ 1} In this appeal, plaintiffs-appellants the Estate of Betty A. Barrish, et al. ("Barrish") appeal from the judgment of the Cuyahoga County Court of Common Pleas which granted the motion for summary judgment of the defendants-appellees Jack Ebert, Kathleen Ebert Viesca, Jack Ebert and Co., and John Paul Ebert, dba Noble Management Co. (collectively referred to as "Ebert"). For the following reasons, we affirm the decision of the trial court. A review of the record reveals the following facts: On December 19, 1999, Betty Barrish attended an open house being held by the Psychobiology Clinic at 2936-2940 Noble Road, Cleveland Heights, Ohio. The Psychobiology Clinic is a tenant in this building, which is owned by Ebert.
 {¶ 2} Mrs. Barrish was dropped off at the rear entrance of the premises by her husband as he went to park the car. Mrs. Barrish approached the rear entrance of the building and walked into a partially enclosed vestibule outside of the back door of the building. A concrete wheelchair ramp is located inside the vestibule. As Mrs. Barrish was walking up this ramp to enter the building, her left foot slipped on the left edge of the ramp causing her to fall onto the floor on her left side, fracturing her hip.
 {¶ 3} On November 26, 2003, Barrish filed a complaint in the Cuyahoga County Court of Common Pleas against Ebert alleging personal injury and subsequently, wrongful death, as a result of the fall.[1]
 {¶ 4} On June 24, 2004, Ebert filed its motion for summary judgment. On August 27, 2004, Barrish filed her brief in opposition. On September 7, 2004, the trial court granted Ebert's motion for summary judgment on the grounds that Barrish failed to present evidence (1) as to the cause of her fall and (2) that the wheelchair ramp was negligently designed, maintained, or constructed.
 {¶ 5} It is from this decision that Barrish now appeals and raises one assignment of error for our review.
 {¶ 6} "I. The trial court erred in granting the motion for summary judgment of defendants-appellees."
 {¶ 7} In this assignment of error, Barrish claims that the trial court erred in granting summary judgment in favor of Ebert because genuine issues of material fact existed concerning her claim for personal injury.
 {¶ 8} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. Cleveland CitySchools (1997), 122 Ohio App.3d 378, citing Dupler v. MansfieldJournal (1980), 64 Ohio St.2d 116, 119-120.
 {¶ 9} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 10} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 11} With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in Ebert's favor was appropriate.
 {¶ 12} Barrish's complaint alleges that Ebert is liable for her injuries because the accident was a result of the negligent construction, maintenance, and design of the wheelchair ramp located at its premises. As a general rule, the mere existence of a wheelchair ramp does not create an unreasonable hazard and a business owner does not have a duty to warn or protect invitees from the open and obvious danger presented by one. LeJeune v.Crocker Shell Food Mart and Car Wash (Oct. 22, 1998), Cuyahoga App. No. 74262.
 {¶ 13} Here, in its motion for summary judgment, Ebert claimed that Barrish failed to provide a report from a liability expert to support her contentions that the wheelchair ramp was negligently constructed, designed, or maintained. In support of its motion, Ebert submitted the deposition testimony of Mrs. Barrish. Mrs. Barrish testified that it was daylight, with no precipitation on the day that she fell. She admitted there was no obstruction to her vision as she entered the building. She admitted that she was blind in her left eye, had difficulty seeing out of her right eye, and was using a cane on the day of the fall. Upon being shown several photographs of the area where she fell, she was unable to identify the area where she fell nor was she able to identify what caused her to fall. Rather, her only testimony was that she stepped off the ramp and fell.
 {¶ 14} In order to defeat a motion for summary judgment on a negligence claim, a plaintiff must establish that a genuine issue of material fact remains as to whether: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the breach of duty proximately caused the plaintiff's injury. Texler v. D.O. Summers Cleaners ShirtLaundry Co. (1998), 81 Ohio St.3d 677, 680. Since the existence of the ramp was an open and obvious danger, Ebert did not have a duty to warn Barrish about its inherent dangers unless there was a substantial physical defect in the ramp or Ebert was negligent in maintaining it. See LeJeune v. Crocker Shell Food Mart andCar Wash, supra at 8. Accordingly, Barrish must produce some evidence that a genuine issue of material fact existed as to the construction, design, or maintenance of the wheelchair ramp. Barrish failed to do so.
 {¶ 15} In support of her brief in opposition, Barrish attached the affidavit of Mr. Barrish describing the condition of the ramp and relevant portions of the ADAAG Accessibility Guidelines, which incorporate the requirements of the ADA for all places of public accommodation.[2]
 {¶ 16} In his affidavit, Mr. Barrish states that he believes his wife fell because of a large four-foot-wide gap, three to four inches deep, between the edge of the ramp and the wall of the enclosure. However, Mr. Barrish does not present any evidence that this gap is a substantial physical defect or that it violates applicable building codes.
 {¶ 17} Barrish also states that he believes his wife fell because of (1) poor lighting in the area, (2) the ramp and the floor were covered in the same dark brown carpet, (3) the ramp did not have any markings or curb, and (4) there were no handrails or guardrails. Although Barrish relies on the ADAAG Accessibility Guidelines to create an issue of fact as to whether the wheelchair ramp violated the handicap access act[3] and was negligently constructed or maintained, she fails to present any evidence to support her allegations.
 {¶ 18} First, Section 4.8.5 of the ADAAG Guidelines states that handrails must be installed on ramps with a "rise greater than 6 in (150 mm) or a horizontal projection greater than 72 in (1830 mm)." However, Barrish did not present any evidence that the ramp in question fell within this range and required handrails. Next, Barrish cites to Section 4.8.7, which states that "ramps with drop off shall have curbs, walls, railings, or projecting surfaces that prevent people from slipping off the ramp. Curbs shall be a minimum of 2 in (50 mm) high * * *." Again, although Barrish alleges that the ramp did not have a curb, she fails to present any evidence that the ramp in question had a drop off that required a curb, or in the event that it did have a drop-off, that it did not have a wall, railing or projecting surface that also complied. Finally, Barrish cites to Section 4.5.3, which deals with the use of carpeting on ramps. However, this section does not require that the carpeting used on the ramp be different from the surrounding floor. Rather, this section states that the carpet must be securely attached and specifies the loop, pile, and thickness of the carpet. Barrish failed to present any evidence that the carpeting in question on the ramp did not comply with the ADAAG Guidelines.
 {¶ 19} An examination of the record reveals that there is nothing in the record to establish whether the wheelchair ramp complied with the specific requirements by the law, and if the wheelchair ramp did not comply with the standards, whether such noncompliance caused the injuries of Mrs. Barrish. See Hummel v.Taco Bell (Aug. 24, 1989), Cuyahoga App. No. 55871. As such, we conclude that Barrish has not raised a factual question that would allow reasonable minds to infer that Ebert breached a specific duty to Mrs. Barrish that was the proximate cause of her injuries. Accordingly, Barrish's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., concurs.
 McMonagle, J., dissents (See dissenting opinion attached).
[1] The action was originally filed by Barrish on December 17, 2001; however, it was voluntarily dismissed without prejudice on December 3, 2002.
[2] Barrish also offered an affidavit from his attorney who examined the records of the Cleveland Heights Building Department. These records allegedly state that Ebert failed to obtain a permit for the construction of the ramp or secure an inspection for the completion of the ramp. However, this "evidence" is not admissible for purposes of Rule 56(C) and (E) since they were not properly authenticated.
[3] The American's with Disabilities Act became effective in 1991 and required the installation of wheelchair ramps.