N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this Court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct. Prac.R. II, Section 2(A)(1).
 {¶ 1} Plaintiffs-appellants, Charles Stoneman and Stoneman Corporation ("Stoneman"), appeal the trial court's decision that granted defendants-appellees, Turner Metal Products ("TMP"), Donald Turner and Sandra Turner's ("Mr. and Mrs. Turner"), motion for summary judgment. Stoneman asserted a claim under the federal Telephone Consumer Protection Act ("TCPA"), 47 USC 227, relating to two facsimiles sent to Stoneman from appellees. For the reasons that follow, we affirm.
 {¶ 2} Stoneman's assignments of error are interrelated and will be addressed together:
 {¶ 3} "I. The trial court erred in granting appellee's [sic] motion for summary judgment.
 {¶ 4} "II. The lower court erred in denying the appellants' motion for summary judgment."
 {¶ 5} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial."Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378, citingDupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120.
 {¶ 6} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a *Page 3 
matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co.,Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 7} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrates that the nonmovant has no evidence to support his claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 8} TMP is a small business that specializes in flame cut steel. In August or September 2002, Mr. and Mrs. Turner traveled to Ohio and visited Stoneman Corporation's business located at 2100 St. Clair, Euclid, Ohio. At that time, they had discussions about TMP with a person who gave them Stoneman's facsimile number and instructed them to send TMP's information to the attention of Chuck Stoneman. TMP did send an information sheet to Stoneman on October 9, 2002. This facsimile provided, among other things, "this is the only fax you will receivefrom us unless you *Page 4 contact us for more information. We do not advertise our business and once or twice a year we try to get our company and information out." Emphasis in original.
 {¶ 9} Nearly two years later, on September 20, 2004, Mrs. Turner sent a two-page personalized facsimile to Chuck Stoneman forwarding information about TMP. The facsimile cover sheet, which was omitted from the attachment on Stoneman's complaint, provided:
 {¶ 10} "I am sorry that Friday was an inconvenient time for Don and I to meet with you when we were in your area. Per your request, I am faxing you a brief letter about TMP. As I stated to you on the phone, there has [sic] been a few problems with the A514 and AR400 plates due to steel allotments from the mills and sometimes the heavier plates, like 6" and over. But all and all considering the steel shortages and prices this year, we still are pretty well stocked up and have experienced only minimal problems. If you require additional information, please do not hesitate to call me. Maybe next time we are in the area it will be a better time to call on you.
 {¶ 11} "Sandi Turner."
 {¶ 12} The owner, Charles Stoneman, generally averred that neither he nor "Stoneman Corporation" authorized the facsimile transmissions sent by TMP in 2002 or 2004. However, there is no evidence in the record that would indicate how many people besides Charles Stoneman were employed and/or worked in some capacity at Stoneman Corporation at times relevant to its complaint. Without some evidence to the contrary, there is nothing to refute Mr. and Mrs. Turner's affidavit that they had *Page 5 
discussions with someone related to Stoneman Corporation, who provided them with the facsimile number and instructed them to send information about TMP to "Chuck Stoneman." Further, there is no indication in the record that appellees could have or did obtain the facsimile number from some other source. While Charles Stoneman generally denied requesting a facsimile from appellees, he did not deny having conversations with Mrs. Turner as referred to in the 2004 facsimile cover sheet. Accordingly, Stoneman's generalized denials do not create a genuine issue of material fact in light of the undisputed evidence that someone from Stoneman Corporation authorized appellees to send the facsimiles.
 {¶ 13} The trial court granted appellees' motion for summary judgment and consequently denied Stoneman's cross-motion for summary judgment on the issue of liability.
 {¶ 14} 47 U.S.C. 227(B)(1)(C) provides:
 {¶ 15} "(b) Restrictions on use of automated telephone equipment.
 {¶ 16} "(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States__
 {¶ 17} "* * *
 {¶ 18} "(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless- *Page 6 
 {¶ 19} "(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
 {¶ 20} "(ii) the sender obtained the number of the telephone facsimile machine through__
 {¶ 21} "(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or
 {¶ 22} "(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before the date of enactment of the Junk Fax Prevention Act of 2005 [enacted July 9, 2005] if the sender possessed the facsimile machine number of the recipient before such date of enactment; and
 {¶ 23} "(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D), except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E);" *Page 7 
 {¶ 24} "The term `unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. 227(A)(5).
 {¶ 25} Appellees maintain that they did not violate the provisions of the TCPA because Stoneman gave them permission to send the facsimiles and/or there was an existing business relationship between the parties.
 {¶ 26} There is nothing in the record to refute the fact that appellees traveled to Ohio to promote their business; that they went to Stoneman's business in Euclid; and that they spoke to an apparent agent of Stoneman Corporation, who instructed them to send TMP's information to the attention of Chuck Stoneman (who happens to be the owner of Stoneman Corporation). The facsimile sent October 2002 from TMP to Stoneman further provided that TMP did not advertise and that it would not send any further facsimiles absent further contact with Stoneman. Indeed, the only facsimile to follow came nearly two years later as a result of a conversation between Charles Stoneman and Mrs. Turner. Based on the text of the cover page, reasonable minds could only conclude that the 2004 facsimile was sent as a result of communications between the parties. The undisputed evidence in the record establishes that there were conversations among the parties prior to each facsimile transmission and someone from or associated with Stoneman either solicited or consented to the transmission of each one. *Page 8 
 {¶ 27} Even construing the facts in a light most favorable to Stoneman, appellees were entitled to summary judgment as a matter of law.
 {¶ 28} Assignments of Error I and II are overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 COLLEEN CONWAY COONEY, J., and KENNETH A. ROCCO, J., CONCUR. *Page 1