OPINION *Page 2 
{¶ 1} Plaintiff-appellant Calvin Bond appeals the July 13, 2007 and July 17, 2007, decisions of the Richland County Court of Common Pleas directing a verdict in favor of Defendants-appellees David and Doris Sharrock following a jury trial.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellees David and Doris Sharrock, at the request of a relative of Appellant Calvin Bond, purchased the property at 172 Sheets Drive, Mansfield, Ohio, from John and Shirley Back. The home located on the premises had been condemned by the City of Mansfield as being unfit for habitation, and an order to allow the Mansfield Fire Department to do a training exercise at the site had been issued.
 {¶ 3} After the condemnation order had been issued and the Mansfield Fire Department had cut holes in the roof preparatory to burning the building, Appellant contacted the Backs and offered to purchase the property on a land contract. His offer included an agreement to fix up the house, obtain financing, and complete the purchase so that he could live in the house as his primary residence. The premises were entirely untenable during the existence of Appellant's land contract with the Backs, and Appellant was unable to secure financing to purchase the property from the Backs.
 {¶ 4} Several things happened on or about August 1, 2001 relating to the property. Katherine Azmoun, a relative of Appellant, possibly a niece, convinced Appellees to purchase the Sheets Drive property from the Backs and give Appellant an opportunity to fix the property, make it habitable and then allow him to purchase *Page 3 
the property from Appellees. Appellees had previously purchased and held a property for Ms. Azmoun until she received a settlement at which time she purchased the property from Appellees.
 {¶ 5} Appellee David Sharrock testified that he estimated his monthly costs of owning the property at $800.00 per month and that his agreement with Appellant was that Appellant would pay $800.00 per month to Appellees until such time as he could refurbish the home to a livable standard and arrange financing to complete the arrangement between the parties.
 {¶ 6} Appellant paid $800.00 per month to Appellees from August, 2001, until the spring of 2003. Appellant then missed a few payments and Appellees filed to evict Appellant from the premises.
 {¶ 7} On June 23, 2003 Appellees' filed a pro se action for eviction in the Mansfield Municipal Court, D D Rentals v. Bond, et al, Case No. 2003 CVG 2225. That case was subsequently dismissed by the court on procedural grounds.
 {¶ 8} On August 12, 2003, Appellees filed a second eviction action for nonpayment of rent in the Mansfield Municipal Court, Sharrock, et al. v.Bond, Case No. 2003 CVG 2360. Appellees as plaintiffs alleged that they had allowed ". . . Bond to continue living in the property as their month-to-month tenant for monthly rent of $800.00. . . .".
 {¶ 9} Appellant defended by arguing that the transaction was an oral land contract. That defense was summarily overruled at the first cause hearing. Appellee Sharrock as plaintiff then testified under oath that the agreement with Appellant was an oral rental agreement. He also testified that he had properly served a three-day *Page 4 
notice, which was for non-payment of rent. A magistrate decision and Judgment were filed on August 29, 2003, finding that Appellant was behind in rent and the eviction was granted.
 {¶ 10} Appellant left the premises on or about September 1, 2003.
 {¶ 11} Appellant filed objections to the magistrate decision. In responding to those objections, Appellees referred to Appellant as a "renter", described their relationship as "clearly landlord/tenant" and again claimed Appellant failed to pay rent.
 {¶ 12} While the objections were pending, Appellant appealed that Judgment. This Court entered a remand to allow the trial court to address the objections.
 {¶ 13} In his appeal Appellant argued that there was a fatal flaw related to the R.C. § 1923.04(A) notice. This Court upheld the decision of the trial court. Sharrock v. Bond, Stark App. No. 2003-CA-0102,2004-Ohio-4857.
 {¶ 14} On April 15, 2005, Appellant commenced the instant action seeking damages for Appellees' breach of various obligations imposed under R.C. § 5321.04 and the oral rental agreement.
 {¶ 15} On or about January 9, 2007, Appellees counterclaimed for "rent" due under the "parties' rental agreement". Later, after Appellee Sharrock was deposed, Appellees withdrew their counterclaim.
 {¶ 16} This case proceeded to a jury trial on June 7, 2007.
 {¶ 17} At trial, Appellant testified that he and members of his family worked on the premises for a total of more than 3500 hours and that he spent substantial sums for materials between August 1, 2001, and May, 2003. *Page 5 
 {¶ 18} Appellant offered no evidence that he had in fact improved the premises or that Appellees in any way benefited from his efforts.
 {¶ 19} Appellant testified at trial that he paid Appellees to hold the property in their name at their expense until he could make the place livable and get financing to purchase the property. He testified that he never resided on the premises and that he had no intent to do so until he could purchase it. When asked if he paid $800.00 per month to live on the property, Appellant stated, "[n]o one would pay any amount of rent to live in the house."
 {¶ 20} At the conclusion of Appellant's case on June 8, 2007, Appellees moved for a directed verdict, which the trial judge granted.
 {¶ 21} Appellant now seeks to overturn that directed verdict and reinstate his right to complete a trial by jury on the issues presented.
 {¶ 22} Appellant raises the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 23} "I. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS-APPELLEES' MOTION FOR A DIRECTED VERDICT.
 {¶ 24} "II. THE TRIAL COURT ERRED IN ITS EVIDENTIARY RULINGS REGARDING THE ADMISSIBILITY OF PLEADINGS, MOTIONS AND A TRANSCRIPT FROM PRIOR SUITS BETWEEN THE PARTIES, AS WELL AS ADMISSIONS MADE IN PLEADINGS IN THE CASE AT BAR."
 I. {¶ 25} In his first assignment of error Appellant asserts that the trial court erred in granting Appellees' motion for a directed verdict. We disagree. *Page 6 
 {¶ 26} Civil Rule 50(A)(4) addresses motions for directed verdict when granted on the evidence. This rule provides as follows:
 {¶ 27} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 28} The "reasonable minds" test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the non-moving party. Williams v. Brown, Muskingum App. Nos. CT2004-0048, CT2004-0051, 2005-Ohio-5301, at ¶ 28, citing Wagner v. Roche Laboratories, 77 Ohio St.3d 116, 119-120,671 N.E.2d 252, 1996-Ohio-85. Further, in Ruta v. Breckenridge-Remy Co.
(1982), 69 Ohio St.2d 66, 430 N.E.2d 935, the Ohio Supreme Court discussed the analysis a trial court is to follow when ruling on a motion for a directed verdict. The Court explained:
 {¶ 29} "When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of the witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. The evidence is granted its most favorable interpretation and is considered as *Page 7 
establishing every material fact it tends to prove. The `reasonable minds' test of Civ. R. 59(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of the party's claims. See Hamden Lodge v. Ohio Fuel GasCo. (1934), 127 Ohio St. 469, 189 N.E. 246. Weighing evidence connotes finding facts from the evidence submitted; no such role is undertaken by the court in considering a motion for a directed verdict. A motion for a directed verdict raises a question of law because it examines the materiality to be drawn from the evidence. To hold that in considering a motion for directed verdict a court may weigh the evidence, would be to hold that a judge may usurp the function of the jury. Section 5, Article I of the Ohio Constitution." Id. at 68-69, 189 N.E. 246.
 {¶ 30} Our standard of review of a trial court's disposition of a motion for directed verdict is de novo. Williams v. Brown, supra, at ¶ 28. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial."Brewer v. Cleveland City Schools Bd. of Edn. (1997),122 Ohio App.3d 378, 383, 701 N.E.2d 1023, citing Dupler v. Mansfield Journal Co.,Inc. (1980), 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187. Thus, the trial court's decision is not granted any deference by the reviewing appellate court. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153.
 {¶ 31} Appellant's claim in the underlying action was for a violation of R.C. § 5321.04 of the Landlord Tenant Act.
 {¶ 32} The Landlord-Tenant Act, Chapter 5321 of the Ohio Revised Code, regulates the relationship between residential landlords and their tenants. *Page 8 
Section 5321.15(A) provides that landlords may only evict residential tenants by following the procedures set forth in Chapters 1923, 5303, and 5321 of the Ohio Revised Code.
 {¶ 33} R.C. § 5321.01 provides the following definitions:
 {¶ 34} "Tenant" means a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others.
 {¶ 35} "Landlord" means the owner, lessor, or sublessor of residential premises, the agent of the owner, lessor, or sublessor, or any person authorized by the owner, lessor, or sublessor to manage the premises or to receive rent from a tenant under a rental agreement
 {¶ 36} "Residential premises" means a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant. "Residential premises" includes a dwelling unit that is owned or operated by a college or university. * * *
 {¶ 37} "Rental agreement" means any agreement or lease, written or oral, which establishes or modifies the terms, conditions, rules, or any other provisions concerning the use and occupancy of residential premises by one of the parties."
 {¶ 38} "Dwelling unit" means a structure or the part of a structure that is used as a home, residence, or sleeping place by one person who maintains a household or by two or more persons who maintain a common household."
 {¶ 39} At trial, Appellee testified that the agreement he had with Appellant was an "option money loan" and not a rental agreement. (T. at 98). He testified that Appellant had the right to buy the property from him. Id. He stated that the agreement was that if *Page 9 
Appellant could get the house fixed up, Appellee would sell it to him at the end of the year. (T. at 99). Appellee stated that Appellant was basically paying his expenses, those costs associated with having borrowed the money for the property, i.e. interest, taxes and insurance. (T. at 98-99). Appellant further testified that all payments made to him were "option payments" and not "rent" because the property was never habitable. (T. at 102).
 {¶ 40} During his testimony, Appellant admitted that he and Appellee had an agreement that he could purchase the property from Appellee for $80,000.00. Appellant likewise testified that the property "was not fit to live in", was "unlivable" and/or was not habitable. (T. at 212, 240, 242, 245, 250). He stated that the property was, in fact, scheduled for demolition when he initially entered into the land contract purchase with the Backs. (T. at 247). Appellant admitted that he never intended to live at the property until he had made the house livable. (T. at 245-246). Appellant also repeatedly stated throughout the duration of his testimony that he made numerous improvements and remodels to the property prior to and during the term of his agreement with Appellees.
 {¶ 41} Based on the record before this Court, we find that the agreement between Appellant and Appellee was not governed by R.C. 5321
as the premises which is the subject of this action was not a residential premises because the structure was not a dwelling unit. There is no evidence in the record that either party ever intended their arrangement to be one of landlord-tenant. Regardless of the different labels attached to the agreement by the parties, both parties entered into the agreement with the understanding that Appellee would purchase the property and Appellant would have *Page 10 
the opportunity to purchase the property from Appellee at such time as he could obtain financing, which, in turn, would require him to first make the property habitable.
 {¶ 42} Upon review of Appellant's Complaint and the record before this Court, we find reasonable minds would only conclude that Appellant was not a residential tenant of Appellees pursuant to R.C. 5321.04. Therefore, we hold the trial court properly granted a directed verdict against Appellant.
 {¶ 43} Based on the foregoing, Appellant's first assignment of error is overruled.
 II. {¶ 44} In his second assignment of error Appellant argues that the trial court erred in its evidentiary rulings. We disagree.
 {¶ 45} Appellant argues that the doctrine of judicial estoppel should have precluded Appellee from taking the position in the instant action that the relationship between the parties was not one of landlord-tenant. Specifically, he argues that the trial court erred in limiting his use of evidence from the prior eviction trial between these two parties. Appellant argues that the trial court should have allowed him to admit, inter alia, the Complaint, the three day notice and a certified transcript of the eviction hearing.
 {¶ 46} The doctrine of judicial estoppel precludes a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Bruck v. Mason (1992), 84 Ohio App.3d 398, 400,616 N.E.2d 1168.
 {¶ 47} Upon review, we do not find that the doctrine of judicial estoppel applies. The Magistrate's order in the forcible entry and detainer action found Appellant was "behind in rent". In the instant action, the issue before the trial court was whether the subject premises were "residential" premises as set forth in the Landlord Tenant Act. *Page 11 
The magistrate in the prior action made no findings as to whether the premises were "residential premises" or whether the structure thereon was a "dwelling unit".
 {¶ 48} Upon review, we find no judicial acceptance of a contrary position taken by the parties in the prior proceeding.
 {¶ 49} Based on the foregoing, Appellant's second assignment of error is overruled.
 {¶ 50} For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed
 Wise, J. Gwin, P. J., and Delaney, J., concur *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed. Costs assessed to Appellant. *Page 1