JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs Maurice and Shirley Conway appeal from the order of the trial court that granted summary judgment to defendants Euclid Chemical Co. ("Euclid Chemical"), Tremco Incorporated and RPM Incorporated (collectively referred to as "defendants") in plaintiffs' action for an intentional tort at the workplace and other causes of action. For the reasons set forth below, we affirm.
 {¶ 2} On April 20, 2000, Maurice Conway, a batch maker for Euclid Chemical and a co-worker were mixing a product called SuperSlip which was to then be pumped into 55-gallon drums. Conway pumped the product into an outdoor storage tank which then began to leak. Conway removed the hose going to the tank and diverted the product to the back of the facility where the leak continued to accumulate.
 {¶ 3} Conway was immediately suspended then terminated for improper behavior resulting in a spill, failing to assist in the clean-up, and changing out of his work clothes and stopping work before the end of his shift.
 {¶ 4} On April 26, 2000, Conway was hospitalized. Medical records indicate that he experienced uncontrolled high blood pressure, hypertensive urgency and solvent exposure.
 {¶ 5} On April 22, 2002, plaintiffs filed the instant complaint against Euclid Chemical for an intentional tort in the workplace, wrongful/retaliatory discharge, race discrimination, negligence and loss of consortium. The matter was consolidated with another matter filed by the Conways, and plaintiffs James and Ivory Knox, against Euclid Chemical and other defendants. In that action, plaintiffs set forth products liability claims and alleged, inter alia, that they had been terminated due to union-related activities.
 {¶ 6} Because plaintiffs Conway and Knox were in the course and scope of their employment at the time they sustained the injuries described in their complaints, the trial court awarded defendants judgment on the pleadings with regard to the products liability and negligent training claims. The consolidated matter was later settled and dismissed as to Mr. and Mrs. Knox.
 {¶ 7} On August 20, 2003, Euclid Chemical, RPM Incorporated and Tremco Incorporated filed a joint motion for summary judgment. In support of their motion, defendants presented evidence that there was no indication that any Euclid Chemical employee ever developed any injury or illness from chemical inhalation, and, apart from Knox and Conway, no employee ever reported any illness caused by inhalation of chemicals. Air monitoring established that employee hazardous chemical exposure was below OSHA's permissible limits prior to the spill and an air monitoring study commissioned after the spill found no exposures in excess of OSHA's permissible limits. (Sterk affidavit). In addition, respirators were to be used during batching and filling operations, and employees received regular safety training.
 {¶ 8} In addition, defendants presented evidence that Conway had a history of hypertension which had not been controlled from six to eight months prior to the incident. In early April 2000, he was prescribed an anti-depressant.
 {¶ 9} On the day of the spill, co-worker Thomas Hemphill noted that Conway was "acting kind of funny" and was "forgetting what he was doing." Contrary to his instructions to pump the SuperSlip into 55-gallon drums, Conway pumped the product into an outdoor storage tank. Hemphill informed Conway that the product was running onto the floor, and Conway then diverted the hose to the rear of the facility but did not shut off the valve to the storage tank, and the product continued to spill.
 {¶ 10} On April 26, 2000, Conway was admitted to the Cleveland Clinic for "possible hypertensive urgency." At the time of admission, Mrs. Conway reportedly stated that her husband had increasing memory loss for the past week or so. A May 9, 2000, MRI revealed "very abnormal, multiple infarcts, some fairly large and all deep." Plaintiff's expert, Dr. Kathleen M. Fagan acknowledged with regard to the infarcts, that "that's certainly a cause of his dementia." She opined, however, that this condition was aggravated by a large exposure to solvents on April 20, 2000. She later admitted that vascular dementia can result in a "sudden worsening," and that she formed her opinion that Conway had been subjected to solvent exposure after receiving information that he had been sprayed with a chemical containing Xylene and Lindron, which had saturated his clothing, a claim which has no support in the record. In any event, according to Dr. Fagan, any solvent-induced component of the dementia had ended as of August 2001.
 {¶ 11} With regard to the wrongful/retaliatory discharge claim, defendants presented evidence that Conway was terminated for pumping the SuperSlip into the storage container, rather than 55-gallon drums, diverting the spill to the driveway without closing the valve thereby causing the product to continue to leak. In addition, he failed to report the spill to a supervisor, denied his involvement with the spill, failed to provide meaningful assistance with clean-up efforts, and stopped work prior to the end of his shift. Defendants averred that they did not know that Conway was claiming a workplace injury at the time he was terminated, and the possibility that he potentially could file a workers' compensation claim played no role in the decision to terminate him. Finally, defendants averred that Conway was not terminated due to his race, age or other protected activities.
 {¶ 12} In opposition, the Conways claimed that the employees did not use respirators and Supervisor Willie Wilson could not recall an employee being disciplined for failing to do so. The Conways also presented evidence that the hoses used to mix various chemicals leaked and employees could smell fumes when they mixed products. Supervisor Wilson admitted, however, that the group received bonuses for injury-free periods and that workers were instructed to replace respirators when they could smell fumes. He also noted that in one of Conway's performance evaluations, Conway was commended for being "quick to report unsafe conditions."
 {¶ 13} The Conways also presented evidence that OSHA cited Euclid Chemical for having eight workers clean up the April 20, 2000, spill. In relevant part, the company was cited for having workers clean the 150-gallon spill, comprised of Xylene, mineral spirits, and petroleum hydrocarbons, without proper training. In addition, the company was cited for failing to provide a medical evaluation to determine its employees' abilities to use respirators and failing to fit-test the employees' respirators.
 {¶ 14} Dr. Fagan opined that the permissible exposure limits set by OSHA were too high, and that Conway had probably been exposed to chemicals at harmful levels. Based upon the sudden onset, combined with the later improvement, Dr. Fagan believed that Conway was suffering from solvent encephalopathy. Dr. Richard Lederman also opined that Conway suffered from a mild degree of impairment due to vascular dementia prior to April 20, 2000, but that he suffered acute brain dysfunction or toxic encephalopathy due to chemical exposure following the spill.
 {¶ 15} Dr. Richard Lederman averred that, although Conway had several strokes prior to the spill and suffered from vascular dementia, he suffered toxic encephalopathy from chemical exposure during the April 20, 2000 spill.
 {¶ 16} The trial court granted Euclid Chemical's motion for summary judgment and noted:
 {¶ 17} "In this case, the plaintiff devotes much space to arguing that the chemical plant was a workplace with safety hazards. While this court can accept that a chemical plant by its nature probably has some unsafe working conditions, this argument misses the mark. Instead, the plaintiff needs to show that this particular "process, procedure, instrumentality or condition" was substantially certain to cause harm. The available evidence doesn't support such a claim. At worst, the accident was caused by plaintiff's own negligence. At best, Euclid Chemical negligently maintained its hoses and couplings, and negligently enforced its own safety regulations. This is sufficient to raise a genuine issue of material fact that defendant was substantially certain that harm would occur to the plaintiff, and that the defendant continued to require the performance of the dangerous task.
 {¶ 18} "* * *
 {¶ 19} "[P]utting aside the important question of whether a common cause of action for `anticipatory retaliatory discharge' even exists in Ohio, this court finds that the record is devoid of evidence sufficient to create a genuine issue of material fact on this claimed cause of action."
 {¶ 20} The court further determined that Euclid Chemical was entitled to judgment as a matter of law on Conway's remaining causes of action for wrongful discharge, i.e., that he was terminated in anticipation of his filing a workers' compensation claim; that defendants committed age discrimination and race discrimination; and that defendants terminated Conway in violation of public policy because he raised safety concerns. The derivative consortium claim also failed. Plaintiffs voluntarily dismissed their remaining claims for relief. They now appeal and assign two errors for our review.
 {¶ 21} Plaintiffs' first assignment of error states:
 {¶ 22} "The trial court erred in granting summary judgment on Maurice Conway's exposure based intentional tort claim pursuant to Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115,570 N.E.2d 118."
 {¶ 23} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if, as a matter of law, no genuine issues exist for trial." Brewer v.Cleveland City Schools (1997), 122 Ohio App.3d 378,701 N.E.2d 1023, citing Dupler v. Mansfield Journal (1980),64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187.
 {¶ 24} Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46; Civ.R. 56(C).
 {¶ 25} An intentional tort is "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." Hannah v. DaytonPower Light Co., 82 Ohio St.3d 482, 484, 1998-Ohio-408,696 N.E.2d 1044. The Ohio Supreme Court in Fyffe v. Jeno's, Inc., supra, set forth the following test in determining whether an employer committed an intentional tort against an employee:
 {¶ 26} "In order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task."
 {¶ 27} Id. at paragraph one of the syllabus.
 {¶ 28} "Proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, that conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Id. at paragraph two of the syllabus.
 {¶ 29} "[M]ere knowledge and appreciation of a possible risk of injury" is not enough to sustain an employer intentional tort claim. Wehri v. Countrymark, Inc. (1992), 82 Ohio App.3d 535,538, 612 N.E.2d 791. The employer must have "actual knowledge of the exact dangers which ultimately caused the injury."
 {¶ 30} In this matter, there is no evidence that Conway was subjected by his employment to a dangerous process, procedure, instrumentality or condition within its business operation. The record indicates that the company had air monitoring, respirators, employee incentives and commendations for safety, and safety meetings to create a safe workplace. There is no evidence that Conway was subjected to chemical exposure limits above those established by OSHA. Keith Parkinson testified that the workers were instructed on how to use the respirators and Willie Wilson testified that the workers were instructed to replace them once fumes were detectable. Employees were also instructed to report unsafe work conditions and plaintiffs' evidence indicated that Conway advised Euclid Chemical of instances in which he observed unsafe conditions, including unsafe hoses. Employees were also instructed to obtain Material Safety Data Sheets ("MSDS") for various products in case of a spill in order to use the correct safety equipment.
 {¶ 31} In addition, there is no evidence that Euclid Chemical had knowledge that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty. Again, the company provided safety equipment, provided safety training and encouraged employees to report unsafe conditions. The record indicates that air monitoring was within legally permissible limits. There is simply no evidence of substantial certainty of harm resulting from a business operation.
 {¶ 32} Finally, there is no evidence that Euclid Chemical required Conway to perform dangerous tasks. Air monitoring did not reveal a danger and safety equipment was provided. Although plaintiffs presented evidence that Conway suffered a chemical exposure on the day of the spill, the record indicates that this was the result of his failure to properly manage the product.
 {¶ 33} The trial court properly entered summary judgment for defendants in this claim for relief.
 {¶ 34} The first assignment of error is without merit. AccordBarger v. Freeman Mfg. Supply Co., Lorain App. No. 03CA008313, 2004-Ohio-2248.
 {¶ 35} Plaintiffs' second assignment of error states:
 {¶ 36} "The trial court erred in granting summary judgment to defendant on Maurice Conway's claim for wrongful termination in violation of public policy."
 {¶ 37} Within this assignment of error, plaintiffs claim that there is a genuine issue of material fact as to whether Conway was terminated for raising various safety complaints at work including Conway's note that hoses had leaked and his concern that the company had hired convicted felons and forced "them to cleanup chemical spills without training and protective gear[.]" Plaintiffs also claim that there is a genuine issue of material fact as to whether Conway was terminated because he clearly intended to pursue a workers' compensation claim. These claims are without merit.
 {¶ 38} With regard to the public policy claim, we note that in Pytlinski v. Brocar Products, Inc. (2002), 94 Ohio St.3d 77,760 N.E.2d 385, the Ohio Supreme Court held that retaliation against employees who file complaints with their employer regarding workplace safety clearly contravenes the public policy of Ohio. The complaints do not need to be filed with OSHA. Id. at 80. Rather, it is the "retaliatory action of the employer that triggers an action for violation of the public policy favoring workplace safety. Id., citing from Kulch v. Structural Fibers,Inc. (1997), 78 Ohio St.3d 134, 152-153, 677 N.E.2d 308.
 {¶ 39} In this matter, the record demonstrates that Conway was commended for apprising the employer of safety concerns; there is no evidence to suggest that Euclid Chemical retaliated against him for doing so. With regard to the claim that Conway complained that the company exploited untrained "convicted felons" by forcing them to clean up spills, the record contains no evidence that he actually made this complaint to his employer. This contention is completely without merit. There is no genuine issue of material fact as to this claim for relief.
 {¶ 40} With regard to the claim of discharge in retaliation for pursuing workers' compensation benefits, we note that R.C.4123.90 provides in relevant part that "no employer shall discharge * * * any employee because the employee filed a claim * * * under the workers' compensation act for an injury * * * which occurred in the course of and arising out of his employment with that employer."
 {¶ 41} In Bryant v. Dayton Casket Co. (1982),69 Ohio St.2d 367, 433 N.E.2d 142, syllabus, the Ohio Supreme Court explained that "the language of R.C. 4123.90 is clear and unambiguous that an employee must have either filed a claim or initiated or pursued proceedings for workers' compensation benefits prior to being discharged for his employer to be liable under the statute."
 {¶ 42} Thus, R.C. 4123.90 "applies only if the employee had been discharged after taking some action which would constitute the actual pursuit of his claim, not just an expression of his intent to do so." Bryant, 69 Ohio St.2d at 371. In Roseboroughv. N.L. Industries (1984), 10 Ohio St.3d 142, 462 N.E.2d 384, the court explained that it "did not hold in Bryant that the protection of R.C. 4123.90 is triggered only upon the actual filing of a written claim." Rather, the correct focus is whether the employee has initiated, pursued, or filed the claim prior to being discharged from employment.
 {¶ 43} Further, if the employee establishes a prima facie case, then the burden of going forward with evidence shifts to the employer to set forth a legitimate, non-retaliatory reason for the discharge. Kilbarger v. Anchor Hocking Glass Co.
(1997), 120 Ohio App.3d 332, 338, 697 N.E.2d 1080. If the employer sets forth a legitimate, non-retaliatory reason for the employee's discharge, the employee must establish that the reason given by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Workers' Compensation Act. Id. While the burden of going forward with evidence may shift between the employee and the employer in these types of cases, the employee will always retain the ultimate burden of proof in an action filed under R.C. 4123.90.Green v. Burton Rubber Processing, Inc. (Dec. 11, 1998), Geauga App. No. 97-G-2102.
 {¶ 44} Here, the record further demonstrates that Conway was immediately suspended following the spill. He was later terminated after an investigation revealed that his actions caused the spill and that he stopped working early and did not provide proper clean-up assistance. At the time he left employment, there was no indication that he was ill or injured and the record does not support an inference that he filed, initiated, or pursued a claim for workers' compensation. Plaintiffs therefore failed to establish a prima facie case. In any event, plaintiffs have presented no evidence to indicate that the company's stated reason for the termination was pretextual. There is no genuine issue of material fact as to this claim for relief.
 {¶ 45} This assignment of error is without merit.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., concurs.
 Gallagher, J., concurs in part and dissents in part (seeattached concurring dissenting opinion)
 CONCURRING AND DISSENTING