JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Michael R. Thomas ("Thomas") appeals the decision of the Cuyahoga County Common Pleas Court granting the motion to compel arbitration of plaintiff-appellee Squires Construction Company ("Squires") made pursuant to R.C. 2711.03. Thomas argues that the trial court improperly granted the motion to compel arbitration as disputes exist as to whether the arbitration agreement was in existence or enforceable. Thomas further argues that when an arbitration provision is at issue the court must proceed with a trial by jury. Finding no merit to Thomas' appeal, we affirm the judgment of the trial court.
 STATEMENT OF THE FACTS {¶ 2} On or about April 1, 2005, Thomas executed a contract with Squires for the installation of a new roof at his home located at 22470 Douglas Road, Shaker Heights, Ohio. The initial contract, attached to Squires' complaint as "Exhibit A," which Thomas characterizes as "Contract 1," contains a standard arbitration clause which states: "Any controversy or claim arising out of or relating to this contract or breach thereof shall be resolved by arbitration in Cleveland, Ohio, in accordance with the Cleveland Better Business Bureau Binding Arbitration Program, the details of which are contained in the Agreement to Arbitrate" (Exhibit B).
 {¶ 3} Thomas asserts that the course of Squires' performance of the original contract was replete with breaches of contract, including: failure to start and complete on time, failure to provide solely its own trained workers, improper installation, *Page 4 
misrepresentation of its experience in removal and disposal of asbestos materials, damage to the residence, and alleged violations of the City of Shaker Heights building codes.
 {¶ 4} Thomas also avers that a city building inspector responded to his request to evaluate general progress and to review what he determined to be substantial defects in the work performance of Squires. He contends that the city inspector reported that Squires' workmen had incorrectly installed baffles, i.e., artificial obstructions that check or deflect the flow of moisture, by unnecessarily removing old insulation and removing and destroying old boards that were in good condition.
 {¶ 5} Thomas allegedly voiced his concern about the overall, substandard performance of Squires as to the original contract through a phone conversation with an agent for Squires, Chris Koehler ("Koehler"). Thomas contends he specifically complained about the number of good boards being destroyed during removal, and the potentially increasing cost of board replacement, which, in his opinion, was unnecessary.
 {¶ 6} Thomas further alleges that during this phone conversation, Koehler stated that what were alleged to be improperly installed boards would be removed, and that Thomas would be charged $3.50 per linear foot of replaced board. Thomas contends he informed Koehler that he could not afford this additional, non-contracted amount, and reiterated his position that the boards did not need to be destroyed when removed by the Squires' crew. *Page 5 
 {¶ 7} Thomas also alleges that during this phone call, Koehler used another phone and called the foreman on the job telling him to order the laborers on the job to cease work, which they allegedly did for 45 minutes. During this time, Thomas and Koehler continued to discuss the matter. Koehler is alleged to have ultimately informed Thomas that Squires would terminate all work unless he agreed to pay $2.50 per linear foot of replaced board.
 {¶ 8} Thomas avers he had no choice but to have Squires continue what in his opinion was unnecessary work, and to agree to this demand for additional payment because the entire roof of his home was exposed and covered with tarp. This same day the foreman on the job, upon direction of the Squires agent, is alleged to have presented Thomas with additional contractual terms and instructed Thomas that he must sign the document in order for work to resume. Thomas alleges that it is this action on the part of Squires which gave rise to his affirmative defense of duress.
 {¶ 9} Squires contends that this second document signed by Mr. Thomas on May 19, 2006, Exhibit A-2, alleged in paragraph two of its complaint to be a part of "Exhibit A," is in fact a part of, or an addendum to, the original contract between the parties, to which the arbitration agreement is applicable. Thomas on the other hand refers to this second signed document as "Contract 2," to which the general arbitration clause in the first contract and its accompanying agreement to arbitrate are inapplicable. *Page 6 
 {¶ 10} According to Thomas, on the night he signed the second contract, rainwater leaked through the tarp damaging ceilings in two rooms. This damage is a component of his prayer of $12,825 set forth in his amended counterclaim for damages allegedly caused by Squires' breach of contract. The prayer also requests denial of Squires' complaint to compel arbitration.
 {¶ 11} Thomas' amended answer and amended counter complaint contain a demand for jury trial on the issues of arbitration, which he denies existing as to "Contract 2," and the applicability of any performance of arbitration agreement, in what he denominates as "Contract 1," including examination of issues that exist at law or in equity for the revocation of any arbitration agreement.
 {¶ 12} Squires in its complaint and reply to Thomas' amended answer and amended counterclaim, maintains that although it has performed the work according to contract, Thomas wrongfully refuses to proceed to and participate in the Better Business Bureau Arbitration, at no cost to either party. It further contends it has a contract right to proceed with its claim for the unpaid balance due of $12,679 in the arbitration process.
 {¶ 13} Although Squires did not file any other pleading or motion other than its original complaint to compel arbitration, the court, after approximately five case management and/or pretrial conferences, conducted an oral hearing in open court on *Page 7 
the motion to compel arbitration.[1] The transcript of the trial court's hearing is part of the record on appeal.
 {¶ 14} Thomas filed his notice of appeal on March 23, 2007, seeking reversal of the trial court's ruling compelling arbitration. Thomas argues that the oral hearing was non-evidentiary in nature, and that he has a right to proceed to jury trial on the issues of set forth in R.C.2711.03.
 STANDARD OF REVIEW {¶ 15} This court recently noted in Post v. Procare Automotive Serv.Solutions, Cuyahoga App. No. 87646, 2007-Ohio-2106, that "[t]he issue of whether an appellate court should apply a de novo or abuse of discretion standard of review when reviewing a trial court's decision granting or denying a motion to compel arbitration, where it is alleged that the arbitration clause is unconscionable, is currently pending before the Ohio Supreme Court." Id. at paragraph 9. See, also, Taylor Bldg. Corp ofAm. v. Benfield, 112 Ohio St.3d 1417, 2006-Ohio-6712, wherein motion to certify a conflict was granted. However, the determinative issue in the instant appeal is not unconscionability, the making of an arbitration agreement, or any other issue set forth in R.C. 2711.03 justifying circumvention of enforcement of an arbitration agreement, *Page 8 
but rather whether the court properly required the party seeking to avoid arbitration to go forward with authenticated evidentiary material in the procedural context of summary judgment, necessitating demonstration of a genuine issue of material fact as to one of the issues set forth in R.C. 2711.03.
 {¶ 16} In McDonough v. Thompson, Cuyahoga App. No. 82222, 2003-Ohio-4655, this court held that a party seeking to avoid arbitration cannot merely rely on the allegations of the pleadings, but must affirmatively demonstrate by motion, with properly authenticated evidentiary material in support, the existence of genuine issues of material fact regarding the issues set forth in R.C. 2711.03. In so holding, the court relied on the decision of Garcia v. Wayne Homes,LLC. Clark App. No. 201 CA 58, 2002-Ohio-1884, and stated: "Revised Code Chapter 2711 does not set forth the amount of evidence that must be produced to receive a trial under R.C. 2711.03. However, * * * courts are directed to address the matter as they would a summary judgment exercise, proceeding to trial where the party moving for the jury trial sets forth specific facts demonstrating that a genuine issue of material fact exists regarding the validity of the arbitration agreement."
 {¶ 17} Given the mandated, procedural context of summary judgment, the appellate standard of review is de novo. We review an appeal from summary judgment under a de novo standard of review. Baiko v. Mays
(2000), 140 Ohio App.3d 1. In Conway v. Euclid Chemical, Cuyahoga County App. No. 85384, 2005-Ohio-3843, this court stated, "[d]e novo review means that this court uses the same standard that *Page 9 
the trial court should have used, and we examine the evidence to determine if as a matter of law genuine issues exist for trial."Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378, citingDupler v. Mansfield Journal Co., Inc. (1980), 64 Ohio St.2d 116, 119-120"[2]
 ASSIGNMENT OF ERROR {¶ 18} It is from the trial court's ruling directing the parties to arbitration that Thomas has filed the instant appeal raising his sole assignment of error:
 "I. THE TRIAL COURT ERRED BY FAILING TO PROCEED TO TRIAL TO DETERMINE WHETHER OR NOT THE AGREEMENT TO ARBITRATE WAS IN EXISTENCE OR ENFORCEABLE BECAUSE WHEN AN ARBITRATION PROVISION IS IN ISSUE THE COURT MUST PROCEED TO TRIAL BY JURY THEREON."
 {¶ 19} We find that the trial court did not err in granting the relief of compelling arbitration sought in Squires' complaint.
 {¶ 20} Courts directly or indirectly enforce binding arbitration clauses of written contracts via R.C. 2711.03 and R.C. 2711.02, respectively, as set forth in the Ohio Arbitration Act (R.C. 2711.01 to R.C. 2711.24). In Wishnosky v. Star-Lite Bldg. Development Co. (2000), Cuyahoga App. No. 77245, this court stated: "The Ohio *Page 10 
Arbitration Act allows for either direct enforcement of [arbitration] agreements through an order to compel arbitration under R.C. 2711.03, or indirect enforcement through an order staying proceedings under R.C.2711.02. R.C. 2711.03 provides for direct enforcement of an arbitration agreement by providing that any party aggrieved by the failure of another to perform under a written agreement for arbitration may petition the court of common pleas for an order directing such arbitration and the `court shall hear the parties.'" (Internal citations omitted.)
 {¶ 21} R.C. 2711.03, Enforcing an arbitration agreement, as amended effective March 15, 2001, reads as follows:
 "(A) The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement. Five days' notice in writing of that petition shall be served upon the party in default. Service of the notice shall be made in the manner provided for the service of a summons. The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement.
 (B) If the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under division (A) of this section, the court shall proceed summarily to the trial of that issue. If no jury trial is demanded as provided in this division, the court shall hear and determine that issue. Except as provided in division (C) of this section, if the issue of the making of the arbitration agreement or the failure to perform it is raised, either party, on or before the return day of the notice of the petition, may demand a jury trial of that issue. Upon the party's demand *Page 11 
for a jury trial, the court shall make an order referring the issue to a jury called and impaneled in the manner provided in civil actions. If the jury finds that no agreement in writing for arbitration was made or that there is no default in proceeding under the agreement, the proceeding shall be dismissed. If the jury finds that an agreement for arbitration was made in writing and that there is a default in proceeding under the agreement, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with that agreement.
 (C) If a written agreement for arbitration is included in a commercial construction contract and the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under division (A) of this section, the court shall proceed summarily to the trial of that issue, and the court shall hear and determine that issue."
 {¶ 22} According to the specific language of R.C. 2711.03, factual issues regarding the existence of an arbitration agreement or its enforcement are tried to the court unless either party requests a jury trial, but according to R.C. 2711.03(C) are tried only to the court if the arbitration agreement is included in a "commercial construction contract."
 {¶ 23} In Post, supra, this court opined that "where a party has filed a motion to compel arbitration, the court must, in a hearing, make a determination as to the validity of the arbitration clause. Additionally, this court has held that the parties should be afforded an evidentiary hearing on the validity of an arbitration clause where unconscionability is raised as an objection to its enforceability. (Internal citations omitted.)
 {¶ 24} This court in McDonough, supra, stated, "[e]ven though R.C.2711.03 does not necessarily require the trial court to conduct a trial, it must, nonetheless, *Page 12 
proceed summarily to trial when it finds that the validity of the arbitration agreement is in issue and the party challenging it has sufficient evidence supporting its claim. When determining whether a trial is necessary under R.C. 2711.03, the relevant inquiry is whether a party has presented sufficient evidence challenging the validity or enforceability of the arbitration provision to require the trial court to proceed to trial before refusing to enforce the arbitration clause.Garcia v. Wayne Homes, LLC, Clark App. No. 2001 CA 53, 2002-Ohio-1884 * * *." McDonough, supra, at paragraph 12.
 {¶ 25} As discussed in Garcia, supra, "Revised Code Chapter 2711 does not set forth the amount of evidence that must be produced to receive a trial under R.C. 2711.03. At least one Ohio court has drawn guidance from federal case law interpreting corresponding Section 4 of the Federal Arbitration Act. Under this approach, courts are directed to address the matter as they would a summary judgment exercise, proceeding to trial where the party moving for the jury trial sets forth specific facts demonstrating that a genuine issue of material fact exists regarding the validity or enforceability of the arbitration agreement. The party challenging the arbitration agreement `must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true. In addition, the party must produce at least some evidence to substantiate his factual allegations.'" Garcia, supra, at paragraph 30. (Internal citations omitted.)
 {¶ 26} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. Dresher v. Burt, *Page 13 75 Ohio St.3d 280, 292-293, 1996-Ohio-107. Under Dresher, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id.
 {¶ 27} In KRK, Inc. v. Crone, Lorain App. No. 05CA008835,2006-Ohio-4415, the court stated specifically that the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Once this burden is satisfied, the nonmoving party bears the burden of offering specific facts to show a genuine issue for trial. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact.
 {¶ 28} The trial court indicated several times that there was no affirmative evidentiary material demonstration by Thomas at the hearing, thus warranting the granting of relief sought in Squires' complaint requesting an order compelling arbitration. The trial court stated, "[t]hose are unsworn allegations." (Tr. at 11.) The trial court further stated, "I'm going to grant the motion to compel arbitration. I don't believe there's any evidence in the record to support the duress claim. I don't think the duress claim is applicable with respect to the execution of the original contract which contained an arbitration provision and to the extent that any terms of the addendum are not inconsistent with those in the original contract, the terms of the original contract control." (Tr. at 16.) *Page 14 
 {¶ 29} A review of the record herein reveals that Thomas failed to demonstrate at the scheduled hearing the existence of a genuine issue as to whether, what he refers to as "Contract 2," Exhibit A-2 "Agreed On Additional Cost," is anything other than an addendum to the original contract, plaintiff's Exhibit A. Furthermore, Thomas failed to demonstrate the existence of any other issue or defense to the enforcement of the arbitration agreement as set forth in R.C. 2711.03.
 {¶ 30} In Post, supra, the dissent found insufficient evidence in the record to find that the arbitration provision of the employment contract was procedurally or substantively unconscionable, as the appellant in that case similarly "failed to offer any testimony or provide an affidavit as evidence of his bargaining position. There is nothing in the record for us to conclude that Anderson [appellant] was unaware of the impact of the agreement or that he was otherwise limited in understanding its terms." Id. at paragraph 42. (Citations omitted.)
 {¶ 31} Given that Thomas failed to properly raise the existence of a genuine issue of material fact, by properly authenticated documentary evidence in support of his motion to deny the motion to compel arbitration, the trial court's finding compelling arbitration will not be disturbed. The ruling was based on the trial court's finding that the "duress claim is inapplicable with respect to the execution of the original contract which contained an arbitration provision, and to the extent that any terms of the addendum are not inconsistent with those in the original contract, that the terms of the original contract control." (Tr. 16.) *Page 15 
 {¶ 32} Given that Thomas failed to properly demonstrate the existence of material facts regarding this issue, and others, the dispute between the parties should not proceed to jury trial as he requested, but rather should proceed to arbitration as the trial court determined was agreed to by the parties.
 {¶ 33} For the foregoing reasons, the judgment of the Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and ANN DYKE, J., CONCUR.
[1] The plaintiff's complaint to compel arbitration filed by plaintiff-appellee on February 27, 2006, and the appellant-defendant's motion to deny complaint for arbitration filed June 27, 2006, were pending and were adjudicated by the court's one-line journal entry of March 6, 2007, which read: "Hearing held on Plaintiff's Motion to Compel Arbitration. Motion is granted . . . Final Vol. 3813 Pg. 0956. . . ."
[2] This de novo standard was utilized by the Second Appellate District in Garcia v. Wayne Homes, supra, as it stated "Nothing in Ohio's Arbitration Act indicates that a special or different standard governs review of a trial court decision under the Act. Rather review of trial court determinations as to whether proceedings should be stayed on the ground that parties agreed to submit their disputes to arbitration, should proceed like review of any other court decision finding an agreement between parties, i.e. accepting findings of fact that are not `clearly erroneous' but deciding questions of law de novo. First Optionsof Chicago, Inc. v. Kaplan (1995), 514 U.S. 938, 947-48,115 S. Ct. 1920, 1926, 131 L.Ed.2d 985." *Page 1