[Cite as *Cole v. Macy's, Inc.*, 2013-Ohio-4705.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99502

---

# LUISA COLE

### PLAINTIFF-APPELLANT

vs.

# MACY'S, INC., ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-778185

**BEFORE:** S. Gallagher, J., Celebrezze, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** October 24, 2013

**ATTORNEYS FOR APPELLANT**

Brian D. Spitz
Fred M. Bean
The Spitz Law Firm, L.L.C.
4568 Mayfield Road
Suite 102
South Euclid, OH   44121


**ATTORNEY FOR APPELLEES**

Robert E. Dezort
Fisher & Phillips, L.L.P.
9150 South Hills Blvd.
Suite 300
Cleveland, OH   44147

SEAN C. GALLAGHER, J.:

{¶1} Appellant Luisa Cole appeals the trial court's decision dismissing her complaint, filed against Macy's Inc. and Christopher Baun (collectively "Macy's"), and compelling arbitration of her employment-related claims. For the following reasons, we affirm the decision of the trial court.

{¶2} In 2011, Macy's terminated Cole's employment. Cole then filed a lawsuit against Macy's, claiming age discrimination, hostile work environment, and unlawful retaliation. During the discovery, Cole amended her complaint to include a claim for wrongful disclosure of personal information. Macy's filed a motion to dismiss the complaint and compel arbitration. The trial court allowed the parties to pursue discovery and then held an evidentiary hearing on the validity of the contract containing the arbitration clause, in which the following facts were adduced.

{¶3} Cole worked for the May Department Store Company from 1988 until 2005 when Macy's merged with May Company. In 2003, Macy's developed an internal dispute resolution program called the Solutions InSTORE Program, which included a binding arbitration agreement. In 2006, Macy's rolled out its Solutions InSTORE Program to include the former May Company employees who continued their employment with Macy's. Cole was one such employee. All Macy's employees agreed to arbitration by continuing or accepting employment with Macy's unless they affirmatively opted out of the program. Twice after notifying the former May Company employees of the arbitration agreement in 2006, Macy's allowed employees like Cole to

opt out of the arbitration requirement by filling out an "opt-out" form and mailing that form to the Office of Solutions InSTORE ("Office of Solutions") within a specified time period. Cole signed an opt-out form in October 2006, but failed to send the form to the Office of Solutions.

{¶4} Most of Cole's arguments revolve around her claim of being unaware of the arbitration program, being told that the arbitration program required her to enroll in the program, or not forming the intent to enter a contract to arbitrate. Despite all those claims, Cole claims she affirmatively opted out of the arbitration program by filling out the form and hand-delivering it to her immediate supervisor. Her supervisor, however, testified he had no recollection of Cole handing him an opt-out form and that he would not have collected any hand-delivered forms because Macy's required the employee to mail the form to the Office of Solutions in order to effectuate a formal opt-out of the arbitration program. It is undisputed that Macy's did not have a record of Cole opting out of the arbitration requirement in 2006 or 2007 or that Cole failed to send in the signed opt-out form to the Office of Solutions.

{¶5} The trial court specifically held that Cole failed to properly opt out of the arbitration program. In light of that finding, the trial court dismissed the complaint and compelled arbitration. Cole timely appealed, raising three assignments of error, all of which are interrelated. We find no merit to Cole's arguments.

{¶6} In her assignments of error, Cole claims the trial court erred by holding that Cole had the burden to establish that she opted out of the arbitration program, by

weighing facts contrary to Civ.R. 56 summary judgment standards and by holding that an implied contract was formed between Cole and Macy's when Cole failed to properly opt out of the arbitration program.

{¶7} Before addressing the merits of Cole's appeal, we must address the procedural posture of this case because it is apparent there is some confusion as to the application of R.C. 2711.03. Cole argues that the trial court erroneously weighed facts and shifted the burden to Cole in ruling on a motion for summary judgment. The error, if any, and confusion crept into the lower court proceedings when Cole attempted to convert Macy's motion to dismiss and compel arbitration into one for summary judgment rather than adhering to the process established by R.C. 2711.03, which provides:

> The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement. * * * The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement.

R.C. 2711.03(A). "If the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under division (A) of [R.C. 2711.03], the court shall proceed summarily to the trial of that issue." R.C. 2711.03(B). In other words, when a defendant petitions the trial court for an order compelling arbitration and dismissing the filed complaint, as Macy's did in this case, the trial court must determine that the

arbitration agreement or failure to comply with the agreement is not an issue before compelling arbitration.

{¶8} In this respect, courts have interwoven Civ.R. 56 summary judgment components to aid trial courts in determining whether the making of the arbitration agreement or failure to comply is an issue requiring the trial court to summarily conduct a trial on that issue. *Squires Constr. Co. v. Thomas*, 8th Dist. Cuyahoga No. 89609, 2008-Ohio-1406, ¶ 25. This interposing of standards does not alter the parties' respective burdens. The party challenging the arbitration agreement has the burden of "showing that under the prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true." *Id.*, citing *Garcia v. Wayne Homes, L.L.C.*, 2d Dist. Clark No. 2001 CA 53, 2002-Ohio-1884. The party moving for the trial, therefore, must set forth specific facts demonstrating that a genuine issue of material fact exists regarding the validity or enforceability of the agreement containing the arbitration provision. *Id.*

{¶9} According to the record on appeal, this is the procedural posture of the evidentiary hearing conducted by the trial court. Upon Macy's filing the motion to dismiss Cole's complaint and compel arbitration, the court was required to determine whether the making of the agreement was an issue as Cole claimed in her brief in opposition, filed after the court allowed her limited discovery. It was in pursuit of this determination that the trial court set the matter for an evidentiary hearing, to determine whether Cole established any genuine issues of material fact regarding the making of the

arbitration agreement. A trial court has discretion whether to hear the parties on their briefs or conduct an evidentiary hearing in fulfilling the statutory requirements of R.C. 2711.03(A). *Chrysler Fin. Servs. Ams., L.L.C. v. Henderson*, 4th Dist. Athens No. 11CA4, 2011-Ohio-6813, ¶ 17, citing *Panzica Constr. Co. v. Zaremba, Inc.*, 8th Dist. Cuyahoga No. 95103, 2011-Ohio-620.

{¶10} As this court has stated regarding our appellate standard of review:

> The core issue in any dispute regarding the arbitrability of a matter is whether the parties agreed to arbitration. Arbitration is a creature of contract, *see United Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409, so we are guided by "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration[.]" *First Options of Chicago, Inc. v. Kaplan* (1995), 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985. This requires an examination of the agreement to arbitrate, which has always been considered a review as a "matter of law;'" in other words, a de novo review. *See Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus.

*N. Park Retirement Community Ctr., Inc. v. Sovran Cos., Ltd.*, 8th Dist. Cuyahoga No. 96376, 2011-Ohio-5179, ¶ 4. Accordingly our standard of review is de novo to determine whether Cole presented a genuine issue of fact regarding the making of the agreement containing the arbitration clause. *Squires Constr. Co.* at ¶ 25.

{¶11} Cole challenged the making of the arbitration agreement as follows: (1) that she was unaware of her obligation to opt out of the program because of the methods Macy's used to promote the program, (2) that no implied contract existed, or (3) that the agreement was unenforceable because it violated the statute of frauds. Notwithstanding those arguments, Cole claims she attempted to opt out of the 2007 implementation of the

Solutions InSTORE Program by signing an opt-out form in October 2006. She then "left [the opt-out form] on [her work] counter and somebody picked it up." Tr. 37:10-11. Cole also testified that she may have handed her immediate supervisor the opt-out form she signed, although her supervisor testified that he personally did not handle any opt-out forms during that time period and would have directed Cole to the Office of Solutions if asked. Cole conceded that she was required to send the signed opt-out form to the Office of Solutions postmarked no later than October 31, 2006.

{¶12} This case is a simple issue of contract interpretation, in which instruments are given their plain and ordinary meaning. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). The opt-out form Cole claimed to have signed in 2006 included a paragraph, immediately preceding her signature block, which explained her obligation to

> complete and return [the opt-out form] ONLY IF YOU <u>DO NOT</u> WANT TO BE COVERED BY THE BENEFITS OF ARBITRATION UNDER SOLUTIONS INSTORE. **In this case, your completed form must be returned to the Office of Solutions InSTORE and postmarked no later than October 31, 2006.** We will send you confirmation that your form was received. If you do not receive confirmation by December 31, 2006, please send an email to [the office of Solutions email address], or call [an 866 phone number] after that date. (Emphasis sic.)

Failure to comply with the opt-out requirements resulted in Cole agreeing to the arbitration provisions of the Solutions InSTORE Program as outlined in the opt-out form she signed and acknowledged. The opt-out form also included an affirmation directly above the signature line containing Cole's signature, that "[Cole] read all the information about Solutions InSTORE * * *."

{¶13} In a similar case, the Sixth Circuit Court of Appeals affirmed a federal district court's decision to compel arbitration in a situation where the plaintiff was the subject of an automatic enrollment arbitration agreement because the plaintiff, although signing it, failed to send his employer the required opt-out form. *Legair v. Circuit City Stores, Inc.*, 213 Fed. Appx. 436, 437, 2007 U.S. App. LEXIS 1050 (Jan. 12, 2007). The *Legair* case is instructive. The plaintiff was an existing employee of Circuit City, which implemented an arbitration program with an auto-enrollment feature. Employees could opt out of the program by sending the company a signed opt-out form. Legair signed a form, indicating he understood his obligations, but failed to send the form as required by the terms included in the opt-out form. *Id.* The *Legair* court concluded that despite the failure to remit the form, Legair's conduct in signing the form demonstrated his agreement to the arbitration program. *Id.* at 439.

{¶14} Likewise in the current case, the trial court did not err in determining that an arbitration agreement between Cole and Macy's existed and that there were no issues as to the making of the agreement that necessitated a trial. Although Cole attempted to opt out of the arbitration program, she failed to do so by the method Macy's established and explained in the very opt-out form Cole claimed to have signed, therefore read and understood, in October 2006. Even considering the facts as presented by Cole, there is no genuine issue of material fact regarding whether Cole sent the opt-out form to the Office of Solutions as required. She admittedly did not. There is no dispute that the Office of Solutions neither received the form, nor sent Cole a confirmation of her choice

to opt out of the arbitration program. By signing the form, Cole demonstrated her agreement to be bound by the Solutions InSTORE arbitration program. *See Legair*.

{¶15} Further, it is irrelevant that Cole claims to have spoken with her supervisor in this case. *Compare id.* at 439 (noting that not only did the plaintiff fail to send in the signed opt-out form, he also failed to discuss his desire to opt out with management). Admittedly, Cole never contacted the Office of Solutions after December 2006 to report never having received confirmation that Macy's Office of Solutions processed her opt-out form. This was also required by the terms stated in the opt-out form she signed. By signing the form, again considering the evidence from Cole's perspective, she agreed to notify the Office of Solutions if she did not receive any confirmation.

{¶16} In light of that undisputed evidence, the trial court did not err in determining that Cole failed to properly opt out of the arbitration program, a program explained by the opt-out form Cole claimed to have signed and read in October 2006. By failing to opt out of the arbitration program as specified in the document she signed, Cole is subject to the terms of the arbitration agreement. Cole was clearly aware of her affirmative obligation by signing the opt-out form in October 2006, some three months prior to being enrolled into the arbitration program, and manifested her assent to participate in the Solutions InSTORE arbitration program by failing to remit the form as required. *See Legair*, 213 Fed. Appx. 436, 437, 2007 U.S. App. LEXIS 1050.

{¶17} Cole also argues that Macy's failed to present evidence that she "received, let alone read," the arbitration plan documents. In essence, Cole is attempting to attack

the validity of the automatic enrollment into the arbitration program through failure of contract. Cole's arguments, however, are untenable in light of the fact that she attempted to opt out of the arbitration program with a document she claimed to have signed in 2006. The document she signed, in October 2006, contained admissions that she read and understood the plan documents and materials, and that she further understood she was required to take certain affirmative steps to opt out of the arbitration program.

{¶18} Further, Cole's dogged reliance on *Tillman v. Macy's Inc.,* E.D. Mich. No. 11-10994, 2011 U.S. Dist. LEXIS 146728 (Dec. 21, 2011), is misplaced. Although *Tillman* largely dealt with the same program at issue here, the *Tillman* decision was based on Michigan law and was distinguished from *Legair*, and the current case, by the fact that the plaintiff in *Tillman* did not sign, or improperly deliver, an opt-out form. *Tillman* at *16. The district court determined that no implied contract could exist based on the facts and circumstance presented. *Id.* at *17. The current case is distiguishable because Macy's demonstrated the formation of a contract because Cole signed the opt-out form that demonstrated Cole's agreement to be bound by the terms of the arbitration program when she failed to remit the form according to the established terms.

{¶19} In this regard, *Rupert v. Macy's Inc.*, N.D. Ohio No. 1:09CV2763, 2010 U.S. Dist. LEXIS 54050 (June 2, 2010), is instructive, although factually distinguishable. In that case, the district court determined that under Ohio law, the InSTORE arbitration program rollout formed a valid contract between Macy's and the employee because the employee failed to affirmatively opt out of the program and the agreement was supported

by consideration. *Id.* at \*17. According to that court, the consideration was the employee's continued employment and Macy's agreement to pay the costs of arbitration. *Id.* at \*23. The court, thus, affirmed the validity of the arbitration agreement despite the added factual situation of the employee signing the opt-out form, but failing to remit according to the terms of the opt-out form, to demonstrate an agreement to be bound.

**{¶20}** Through Cole's own testimony that she signed the opt-out form in October 2006, she admitted to every aspect of the arbitration program Macy's asserted to require a dismissal of the complaint and an order compelling arbitration. Her failure to properly invoke the opt-out provision to the arbitration agreement is dispositive of her claims and this appeal. By signing the form, Cole demonstrated her agreement to be bound by the terms of the InSTORE arbitration program unless she remitted the form pursuant to the terms of the form she attempted to rely on to create a genuine issue of fact as to the formation of the arbitration agreement.

**{¶21}** From our de novo review of the record, we agree with the trial court that there are no issues regarding the making of the arbitration agreement between Cole and Macy's. The trial court, therefore, did not err in granting Macy's motion to dismiss and compel arbitration of the claims raised in Cole's complaint pursuant to R.C. 2711.03(A).

**{¶22}** We affirm the decision of the trial court.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KENNETH A. ROCCO, J., CONCUR