[Cite as *Snyder v. Old World Classics, L.L.C.*, 2025-Ohio-3188.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

MATTHEW SNYDER, et al.

    Appellants

    v.

OLD WORLD CLASSICS, LLC

    Appellee

C.A. No.    23CA0019-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    23-CIV-0055

DECISION AND JOURNAL ENTRY

Dated: September 8, 2025

---

FLAGG LANZINGER, Judge.

**{¶1}** This matter is before this Court pursuant to the Ohio Supreme Court's remand. *Snyder v. Old World Classics, L.L.C.*, 2025-Ohio-1875 ("*Snyder II*"). The Ohio Supreme Court vacated this Court's judgment in *Snyder v. Old World Classics, LLC*, 2023-Ohio-4019 (9th Dist.) ("*Snyder I*") and remanded the matter for this Court "to consider whether the arbitration clause is void due to fraudulent inducement." *Snyder II* at ¶ 5. For the following reasons, this Court reverses the decision of the trial court.

I.

**{¶2}** According to their complaint, Matthew and Katherine Snyder contracted with Old World Classics, LLC ("Old World"), a home construction business, in October 2020 to construct a new, custom home. The Snyders alleged that they worked with Old World's "project visionary" Jim Yezbak during this process. The Snyders alleged that Yezbak represented that he had an ownership interest in Old World and that he was a member of its leadership team.

**{¶3}** Relevant to this appeal, the parties' construction contract contained a dispute-resolution clause, which required the parties to attempt to resolve any dispute through private mediation. If the dispute remained unresolved after private mediation, the contract required the parties to submit the dispute to binding arbitration.

**{¶4}** The Snyders alleged that Old World started construction on their home in March 2021. Old World informed the Snyders in February 2022 that the home was completed and ready for occupancy. According to the Snyders, the home remains uncompleted and in an unworkmanlike state. The Snyders alleged that they informed Old World of certain issues at their home, and that the cost of completion would exceed $32,990.00. Old World, in turn, filed a lien against the home in the amount of $32,990.00. The Snyders then filed the underlying lawsuit against Old World. Specifically, the Snyders sued Old World in January 2023, asserting claims for fraud, violation of the home construction service suppliers act, promissory estoppel, slander of title, lien release, and breach of contract.

**{¶5}** The Snyders did not engage in mediation or arbitration with Old World prior to filing their complaint. Instead, they alleged in their complaint that "the mediation and arbitration clause contained in Section 30 of the Construction Contract is inapplicable because it is limited to actions that sound exclusively in contract, because it was agreed to by the Snyders upon the fraudulent inducement of Old World[,] . . . and/or because it is revocable due to Old World's violations of Revised Code 4722.03(A)."

**{¶6}** Regarding fraudulent inducement, the Snyders alleged that they were initially reluctant to sign the construction contract because it included an arbitration clause. The Snyders alleged that Yezbak allayed their concerns by representing that Old World had only one legal dispute in the past, which was involved in mediation. Specifically, the Snyders alleged:

On or about October 28, 2020, Jim Yezbak represented that Old World and its two co-owners, who included Andrew Eggeman, only had had one legal dispute in the past, and on October 29, 2020, he clarified that it had been a mediation, doing so with the knowledge that the Snyders were reluctant to enter into a contract that included an arbitration clause . . . .

According to the Snyders, this—as well as other representations—proved to be a misrepresentation. In support of their allegation that Old World misrepresented its history of legal disputes, the Snyders cited six construction-related lawsuits that were filed against Andrew Eggeman (the owner of Old World), Old World, and/or Old World Classics by Phil Eggeman, Inc. between 2009-2017.

{¶7} Old World responded to the Snyders' complaint by filing a motion to stay and compel arbitration under R.C. 2711.01 et seq. and the Federal Arbitration Act ("FAA"). In its motion, Old World addressed the Snyders' allegation that the arbitration clause in the parties' contract was unenforceable because Old World fraudulently induced them into agreeing to it. Old World argued that the "primary Defendant" in the six cases cited in the Snyders' complaint was Old World Classics by Phil Eggeman, Inc., which Old World claimed was an "entity entirely unrelated to" Old World. Old World also argued that the lawsuits occurred more than ten years before the Snyders began working with Old World, and that "it would be entirely reasonable for one of [Old World's] employees to indicate [Old World] was only involved in one prior dispute." Old World then acknowledged a lawsuit filed against it in 2017, but asserted it was a dispute with a former employee that had nothing to do with construction.

{¶8} In support of its motion, Old World attached red-lined drafts of the construction contract, copies of emails exchanged between Yezbak and the Snyders, and an affidavit from Andrew Eggeman. In his affidavit, Andrew averred, in part:

[The Snyders'] Complaint identifies six lawsuits that [Old World] was supposedly party to. Five of those lawsuits were against "Old World Classics by Phil Eggeman,

Inc." That company was my father's company and those lawsuits dealt with unpaid trades during the 2009 housing crash. If Old World was named as a party to any of those lawsuits it was in error, as Old World . . . was a complete stranger to those disputes. . . . I, along with my partners, are owners of . . . Old World . . . . Phil Eggeman is not an owner and has no affiliation with Old World . . . . The only recent lawsuit [the Snyders] identified . . . was an employment dispute with a former employee, and had nothing to do with construction.

{¶9} After Old World filed its motion to stay and compel arbitration, the trial court set the matter for a "non-oral hearing" to occur on Monday, March 27, 2023. The trial court also set a deadline for the parties to submit opposing briefs and memoranda by Friday, March 24, 2023.

{¶10} On Friday, March 24, 2023, the Snyders filed their brief in opposition to Old World's motion to stay and compel arbitration. The Snyders argued, in part, that Old World fraudulently induced them into agreeing to the arbitration clause, rendering it void and unenforceable. In support of their brief in opposition, the Snyders attached over 350 pages of documents, including: (1) emails between the Snyders and Yezbak wherein Yezbak represented that "[w]e have been a party to 1 mediation that we mutually resolved[;]" (2) affidavits from the Snyders; (3) a red-lined draft of the construction contract reflecting that the Snyders initially proposed adding "Contractor represents that it has been a party to one arbitration in the last five years, which it previously disclosed to Owners" to the dispute-resolution clause, which was ultimately omitted from the construction contract after Yezbak represented that Old World and its owners had only been involved in a mediation; (4) court filings from other cases involving Old World Classics by Phil Eggeman, Inc.; (5) a 2017 complaint for breach of contract filed against Old World by one of its former employees; (6) Andrew Eggeman's Chapter 7 bankruptcy petition filed in 2010, reflecting that Andrew listed "Old World Classics by Phil Eggeman Inc. Closed July 2009; 100% Ownership Old World Classics LLC 49% Ownership" under his Schedule B Personal Property; (7) Phillip R. Eggeman's (Andrew's father) Chapter 7 bankruptcy petition filed in 2010,

reflecting that Phillip listed lawsuits filed against Old World Classics by Phil Eggeman under his Statement of Financial affairs, noting that the "[b]usiness was sold in December 2008 to Debtor's Son (who is in bankruptcy). The business is closed[;]" and (8) a promissory cognovit note Andrew signed in March 2009 wherein Andrew listed his title as "President for Old World Classics By Phil Eggeman, Inc."

{¶11} In his affidavit, Matthew Snyder averred that, prior to executing the construction contract: (1) he asked Yezbak whether Old World and its co-owners had a history of legal disputes and Yezbak responded that they had only been involved in one arbitration (which Yezbak later clarified was a mediation, not arbitration); (2) he explained to Yezbak that the absence of a history of legal disputes "would be meaningful and allay [their] concerns regarding the proposed arbitration clause[;]" (3) he asked Yezbak about the history of legal disputes because Katherine (his spouse) had searched the online docket for the Stark County Court of Common Pleas; and (4) Yezbak explained that any lawsuits "were for a different company of an owner's father, and the owners of [Old World] were completely separate from it." Katherine's affidavit contained similar averments, explaining that she witnessed the discussion between Matthew and Yezbak regarding Old World and its owners' history of legal disputes.

{¶12} The Snyders relied upon the above evidence to support their argument that: (1) Yezbak misrepresented the history of legal disputes of Old World and its owners; (2) Andrew Eggeman misrepresented his role in Old World Classics by Phil Eggeman, Inc.; (3) Andrew was the sole owner of Old World Classics by Phil Eggeman, Inc. when it was involved in various lawsuits; and (4) in 2009, Andrew was sued for fraud based upon allegations that he issued false affidavits. The Snyders also argued that Andrew created Old World as a separate company after Old World Classics by Phil Eggeman, Inc. became involved in numerous lawsuits.

{¶13} On Monday, March 27, 2023, the trial court granted Old World's motion to stay and compel arbitration without explaining its reasoning. This Court notes that the trial court rendered its decision three days (two of which were weekend days) after the Snyders filed their brief in opposition, and before Old World responded to the Snyders' brief in opposition.

{¶14} The Snyders appealed the trial court's decision to this Court in *Snyder I*. This Court reversed the trial court's decision on the basis that the trial court erred by not holding an oral hearing under R.C. 2711.03 on Old World's motion to stay and compel arbitration. *Snyder I*, 2023-Ohio-4019, at ¶ 10 (9th Dist.). This Court reached this conclusion even though neither party challenged the trial court's failure to hold an oral hearing at the trial court or on appeal.

{¶15} Old World appealed this Court's decision to the Ohio Supreme Court. *Snyder II,* 2025-Ohio-1875. Old World also moved this Court to certify a conflict between our decision in *Snyder I* and the decisions of two other appellate courts on the following question: "Does R.C. 2711.03 require a trial court to hold an oral hearing on a motion to compel arbitration?" *Snyder II* at ¶ 3. This Court granted Old World's motion to certify a conflict. The Ohio Supreme Court agreed that a conflict existed and accepted the jurisdictional appeal. *Id.*

{¶16} Relying upon the principle of party presentation, the Ohio Supreme Court vacated this Court's judgment and remanded the matter for this Court to "consider whether the arbitration clause is void due to fraudulent inducement." *Id.* at ¶ 5. Having done so, the Ohio Supreme Court determined that a conflict no longer existed. *Id.* This matter is now before this Court for a decision consistent with the Ohio Supreme Court's remand instructions. *Id.*

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING
THE APPELLEE'S MOTION TO STAY AND COMPEL ARBITRATION.

{¶17} In their sole assignment of error, the Snyders argue that the trial court erred by granting Old World's motion to stay and compel arbitration. For the following reasons, this Court sustains the Snyders' assignment of error.

{¶18} "When addressing whether a trial court has properly granted motions to stay proceedings and compel arbitration, the standard of review is abuse of discretion." *Eagle v. Fred Martin Motor Co.*, 2004-Ohio-829, ¶ 10 (9th Dist.). "An abuse of discretion suggests more than an error of law or judgment but instead implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *Id.* "Absent an abuse of discretion, an appellate court may not substitute is judgment for that of the trial court." *Id.* "However, when an appellate court is presented with purely legal questions, the standard of review to be applied is de novo." *Id.* at ¶ 11. "Under the de novo standard of review, an appellate court does not give deference to a trial court's decision." *Id.*

{¶19} R.C. 2711.03(A) provides that:

[t]he party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement.

R.C. 2711.03(A) also provides that "[t]he court shall hear the parties, and, *upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue*, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement." (Emphasis added.); 9 U.S.C. 4 (reflecting that Section 4 of the FAA provides substantially the same language).

{¶20} R.C. 2711.03(B) provides that "[i]f the making of the arbitration agreement or the failure to perform it *is in issue* in a petition filed under division (A) of this section, the court shall

proceed summarily to the trial of that issue." (Emphasis added.); 9 U.S.C. 4 (reflecting that Section 4 of the FAA provides substantially the same language). "In other words, . . . the trial court must determine that the arbitration agreement or failure to comply with the agreement is not an issue before compelling arbitration." *Cole v. Macy's, Inc.*, 2013-Ohio-4705, ¶ 7 (8th Dist.).

{¶21} "When determining whether a trial is necessary under R.C. 2711.03(B) and the corresponding provision of Section 4 of the FAA, the relevant inquiry is whether a party has questioned the validity or enforceability of the arbitration provision and presented sufficient evidence to challenge such." *Pyle v. Wells Fargo Fin.*, 2004-Ohio-4892, ¶ 15 (10th Dist.). As the Tenth District explained, "R.C. 2711 and the FAA do not set forth the amount of evidence that must be produced to receive a trial under R.C. 2711.03(B) and the corresponding provision of Section 4 of the FAA." *Id.* "However, some courts have addressed the matter as they would a summary judgment exercise, proceeding to trial where the party moving for the jury trial sets forth specific facts demonstrating that a genuine issue of material fact exists regarding the validity or enforceability of the arbitration agreement." *Id.* at ¶ 15, citing *Garcia v. Wayne Homes, LLC*, 2002-Ohio-1884 (2d Dist.) and *McDonough v. Thompson*, 2003-Ohio-4655 (8th Dist.). The Eighth District has similarly explained:

> courts have interwoven Civ.R. 56 summary judgment components to aid trial courts in determining whether the making of the arbitration agreement or failure to comply is an issue requiring the trial court to summarily conduct a trial on that issue. . . . This interposing of standards does not alter the parties' respective burdens. The party challenging the arbitration agreement has the burden of "showing that under the prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true." . . . The party moving for the trial, therefore, must set forth specific facts demonstrating that a genuine issue of material fact exists regarding the validity or enforceability of the agreement containing the arbitration provision.

*Cole* at ¶ 8. Federal courts have also applied the summary judgment standard when considering a motion to compel arbitration. *See, e.g.*, *Clark-Dean v. Univ. Contracting Co.*, LLC, 2024 WL

4349347, *3 (N.D.Ohio Sept. 29, 2023), quoting *Jones v. U-HAUL Co. of Mass. and Ohio, Inc.*, 16 F.Supp. 3d 922, 930 (S.D.Ohio 2014) ("In examining a motion to compel arbitration, 'courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party.'"); *Bradford v. Team Pizza, Inc.*, F.R.D. 313, 317 (S.D.Ohio May 21, 2025) (same).

{¶22} Here, the Snyders argued that Old World fraudulently induced them into agreeing to the arbitration clause of the construction contract. As the Ohio Supreme Court has explained, "an arbitration clause is, in effect, a contract within a contract subject to revocation on its own merits . . . ." *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 501 (1998), citing R.C. 2711.01(A). "[P]roof of fraud in the inducement of the arbitration provision itself does defeat a motion to compel arbitration." *ABM Farms, Inc.* at 501.

{¶23} "A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract." *ABM Farms, Inc.* at 503. "In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to [his or] her detriment." *Id.* at 502.

{¶24} On appeal, the Snyders summarize that Old World materially misrepresented: (1) that Old World and Old World Classics by Phil Eggeman, Inc. were separate companies with separate ownership; and (2) its history of legal disputes. The Snyders argue that they justifiably relied upon these material misrepresentations to their detriment because they would not have agreed to the arbitration clause had they known Old World and its owners' history of legal disputes.

{¶25} As noted above, the Snyders supported their brief in opposition to Old World's motion to compel with over 350 pages of documents, including: (1) emails between the Snyders and Yezbak wherein Yezbak represented that "[w]e have been a party to 1 mediation that we mutually resolved[;]" (2) affidavits from the Snyders; (3) a red-lined draft of the construction contract reflecting that the Snyders initially proposed adding "Contractor represents that it has been a party to one arbitration in the last five years, which it previously disclosed to Owners" to the dispute-resolution clause, which was ultimately omitted from the construction contract after Yezbak represented that Old World and its owners had only been involved in a mediation; (4) court filings from other cases involving Old World Classics by Phil Eggeman, Inc.; (5) a 2017 complaint for breach of contract filed against Old World by one of its former employees; (6) Andrew Eggeman's Chapter 7 bankruptcy petition filed in 2010, reflecting that Andrew listed "Old World Classics by Phil Eggeman Inc. Closed July 2009; 100% Ownership Old World Classics LLC 49% Ownership" under his Schedule B Personal Property; (7) Phillip R. Eggeman's (Andrew's father) Chapter 7 bankruptcy petition filed in 2010, reflecting that Phillip listed lawsuits filed against Old World Classics by Phil Eggeman under his Statement of Financial affairs, noting that the "[b]usiness was sold in December 2008 to Debtor's Son (who is in bankruptcy). The business is closed[;]" and (8) a promissory cognovit note Andrew signed in March 2009 wherein Andrew listed his title as "President for Old World Classics By Phil Eggeman, Inc."

{¶26} In his affidavit, Matthew averred that he expressed the Snyders' concerns regarding the arbitration clause of the construction contract to Yezbak. Matthew averred that he explained to Yezbak that the absence of a history of legal disputes "would be meaningful and allay [their] concerns regarding the proposed arbitration clause." The Snyders averred that Yezbak represented that Old World and its owners had been involved in one arbitration in the past, which Yezbak later

clarified via email was a mediation, not arbitration. The Snyders also averred that Yezbak explained that any lawsuits "were for a different company of an owner's father, and the owners of [Old World] were completely separate from it."

**{¶27}** Construing all facts and reasonable inferences in favor of the Snyders, this Court concludes that the Snyders set forth sufficient evidence to establish that a genuine issue of material fact exists as to whether Old World fraudulently induced them into agreeing to the arbitration clause of the construction contract. *See Pyle*, 2004-Ohio-4892, at ¶ 15 (10th Dist.); *Cole*, 2013-Ohio-4705, at ¶ 8 (8th Dist.); *Clark-Dean*, 2024 WL 4349347, at *3 (N.D.Ohio Sept. 29, 2023). In other words, a genuine issue of material fact exists regarding the validity or enforceability of the arbitration clause in the parties' construction contract. *Id.* As a result, the trial court erred by granting Old World's motion to stay and compel arbitration. *See id.* Accordingly, the Snyders' assignment of error is sustained.

### III.

**{¶28}** The Snyders' assignment of error is sustained. The judgment of the Medina County Court of Common Pleas is reversed, and the matter is remanded for proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
JILL FLAGG LANZINGER
FOR THE COURT

STEVENSON, J.
CONCURS.

HENSAL, P. J.
DISSENTING.

{¶29} Although the Snyders' affidavits indicate that they discussed Old World's history of legal disputes with Mr. Yezbak, neither avers that the Snyders agreed to the arbitration clause because of the assurances they received about Old World's lack of such history. Accordingly, I would conclude that the Snyders failed to establish there is a genuine issue about whether they relied on Mr. Yezbak's allegedly fraudulent representations when they agreed to the arbitration clause. *See ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502 (1998) (explaining that plaintiffs must have relied on a misrepresentation to their detriment). The emails the Snyders presented also do not indicate that their agreement to the arbitration clause was reliant on Old World's lack of legal disputes. At best, the Snyders' affidavits indicate that they had some concerns about the

arbitration clause, that they were reluctant to agree to an arbitration clause, and that they sought to have their concerns allayed by Old World. I, therefore, respectfully dissent.

APPEARANCES:

MATTHEW L. SNYDER, Attorney at Law, pro se, for Appellants.

ALEX J. MCCALLION and AARON M. JONES, Attorneys at Law, for Appellee.